

THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION



FILED

MAY 15 2012
5-15-12

THOMAS G. CRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Diane Parker, | : | |
| Plaintiff | : | |
| vs. | : | CASE N0. 12cv3207 |
| Four Seasons Hotels, Limited | : | JUDGE HARRY D. LEINENWEBER |
| Defendant | : | MAGISTRATE SIDNEY I. SCHENKIER |

## AMENDED COMPLAINT

Diane Parker, an unrepresented Plaintiff, respectfully avers the following:

1. Plaintiff is an individual residing at 114 Snyder Road, Venetia, Washington, County, Pennsylvania, 15367.

2. Defendant, Four Seasons Hotels, Limited, is a Canadian business entity, having its main offices at 1165 Leslie Street, Toronto, Ontario, Canada M3C 2K8. None of its owners are residents or citizens of Pennsylvania.

3. Jurisdiction arises by virtue of 28 U.S.C. 1332 (a)(2) because the amount in controversy exceeds $75,000.00 and the citizenship of the parties is diverse.

4. The original COMPLAINT in this case was filed on April 30, 2012 pursuant to an ORDER of the CIRCUIT COURT OF COOK COUNTY, ILLINOIS of May 5, 2011. A copy of said ORDER is attached below as EXHIBIT A.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

DIANE PARKER,                       :
    Plaintiff                  :
  v.                             :       No. 09 L 4692
FOUR SEASONS HOTELS, LIMITED,       :       DIANE PARKER, PRO SE
    Defendant                  :       114 Snyder Road
..............................................: VENETIA, PA  15367
FOUR SEASONS HOTELS, LIMITED,       :       412-596-3692
    Third Party Plaintiff      :
  v.                             :
                               :
HBA INTERNATIONAL,                  :
                               :
    Third Party Defendant      :
..............................................:

## ORDER OF COURT

And now, this _____day of May, 2011, on Motion of the Plaintiff, Plaintiff's complaint against
defendant Four Seasons Hotels, Ltd. is hereby voluntarily dismissed, without prejudice.  Plaintiff
is granted leave to re-file a complaint within one year.  Plaintiff's Motion for leave to file Third
Amended Complaint is voluntarily withdrawn.  Defendant Four Seasons Hotels, Ltd.'s third
party complaint against HBA INTERNATIONAL is and dismissed.  Arbitration is cancelled.
Defendant's Motion to Exclude Testimony is rendered moot. Plaintiff to pay costs of $587 .
The Clerk is hereby ordered and directed to mark the docket as follows:

COMPLAINT VOLUNTARILY DISMISSED, WITH LEAVE FOR PLAINTIFF TO
RE-FILE A COMPLAINT WITHIN ONE YEAR.    Associate Judge James E. Snyder

MAY 05 2011

By the Court
Circuit Court-1970

EXHIBIT A

5. The COMPLAINT was served on Defendant's agent on May 1, 2012.

6. On May 10, 2012, Defendant served a MOTION TO DISMISS on Plaintiff pursuant to F.R.C.P. 12(b)(1).

7. This AMENDED COMPLAINT is being filed pursuant to F.R.C.P. 15 (a)(1)(B).

8. Since the year 1990, Defendant and others subject to its direction, control, management and disposition owned, leased, and operated the real estate, furniture, fixtures, equipment, and five star luxury hotel business collectively known as the Four Seasons Hotel Chicago, 120 East Delaware Place, and 900 North Michigan Avenue, Chicago, Illinois, 60611.

9. On April 27, 2007, Plaintiff became a paying guest in luxury suite 3627 of said hotel and entered into an implied agreement with Defendant.

10. As part of said implied agreement, Plaintiff promised to pay Defendant all just and reasonable charges and costs of occupying and using Suite 3627 and all common areas of said hotel, together with the furniture, fixtures and equipment in said suite.

11. As part of said implied agreement, Defendant promised, represented and warranted to Plaintiff that:

    a. It did not know of any dangerous or hazardous conditions in said suite;

    b. The furniture, fixtures and equipment in said suite complied with all standards, rules, regulations and laws of safety;

    c. Recent renovations, including the installation of sliding glass bathroom doors, complied with all city, state, and Federal rules, regulations, ordinances, laws and building codes.

12. In violation of said implied agreement, Defendant willfully, intentionally, maliciously and knowingly concealed the following information from Plaintiff.

a. A "bunch" of recently installed sliding glass bathroom doors similar to the one in suite 3627 had recently exploded into unlawfully large pieces;

b. The originally installed sliding glass bathroom door in suite 3627 had recently exploded into unlawfully large pieces;

c. The replacement sliding glass bathroom door in suite 3627 was also likely to explode into unlawfully large pieces;

d. Said sliding glass bathroom door had recently been installed without the knowledge, permission or approval of the Chicago Building Department;

e. Said sliding glass bathroom door violated of city, state and federal laws and regulations regarding sliding glass bathroom doors;

13. Defendant had actual knowledge of the foregoing information and the illegal condition of the sliding glass bathroom door and the cause of said explosions, but nevertheless, rented suites that contained said defective sliding glass bathroom doors without warning guests of the known dangers.

14. The sliding glass bathroom door in suite 3627 was similar to the one shown below as EXHIBIT B.



EXHIBIT B

15. On April 28, 2007, as Plaintiff slid said sliding glass bathroom door open, its handle collided with the nearby wall, causing the glass to explode and shatter into the actual sheets and pieces shown below in EXHIBIT C.



EXHIBIT C

16. The force of said explosion caused Plaintiff to be thrown violently across the toilet, up against the wall and down onto the floor.

17. The high speed impact of large sheets of shattered glass against various parts of Plaintiff's body and the violent collision of Plaintiff's body with said wall, toilet and floor caused Plaintiff to sustain the following serious injuries.

    a.   Herniations of two spinal intervertebral discs;

    b.   Carpal tunnel syndrome, right;

    c.   bruises, cuts, abrasions and contusions to various parts of her body;

    d.   pain and suffering;

    e.   substantial bleeding;

    f.   emotional disorder;

    g.   numbness and loss of full use of her right hand;

    h.   other injuries which might not yet have manifested themselves, and at this time cannot be more fully particularized.

18. Said explosion and shattering of glass were proximately caused by the wrongful and unlawful conduct of Defendant's agents, servants, employees and others acting in its behalf.

19. As a direct and proximate result of said wrongful and unlawful conduct, Plaintiff has incurred the following damages:

    a.   Pain and suffering;

    b.   the expenditure of more than $38,000.00 in an effort to treat, heal and cure her injuries and restore her good health;

    c.   impairment of her earning capacity;

    d.   loss of consortium;

e.  other damages which have not yet manifested themselves, and cannot at this time be more fully particularized.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award Plaintiff compensatory damages against Defendant in an amount in excess of $75,000.00, plus punitive damages in an amount in excess of $75,000.00, to recover which this suit is brought.

JURY TRIAL DEMANDED

## PRELIMINARY ALLEGATIONS IN SUPPORT OF PUNITIVE DAMAGES

20. All of the foregoing allegations are adopted herein as though completely spelled out.

21. Prior to April 28, 2007, Defendant and others acting in its behalf and subject to its direction, management and control began executing Defendant's plans to perform renovations on Defendant's Chicago hotel, including the replacement of shower curtains with sliding glass doors in the bathrooms of 136 luxury suites.

22. Prior to April 28, 2007, Defendant and others acting in concert with and on behalf of Defendant, pursuant to directions from the Defendant, and for the benefit of Defendant, knew that it would be very difficult or impossible to obtain permission from the Chicago Building Construction Department to install 136 sliding glass bathroom doors in Defendant's Chicago hotel, and also knew that to do so without permission would violate the law.

## DEFENDANT FRAUDULENTLY OBTAINED A BUILDING PERMIT

23. Prior to April 28, 2007,, Defendant and others acting in its behalf and subject to its direction and control executed an application for a building permit, Page 4 of which is attached below as EXHIBIT D.

Page 4

## WARNING TO PROPERTY OWNERS AND CONTRACTORS

I, as owner and applicant **900 HDP, LLC** and as contractor **McHUGH CONST. COMP.** understand that it is against the law to
exceed the scope of a building permit.
✓ Owner's Initials *PM*

I, as owner and applicant **900 HDP, LLC** and as contractor **McHUGH CONST. COMP.** understand that if I build, or allow anyone else
to build, any building, room addition, structure or other object that differs from, or in any way exceeds, what this permit authorizes me to build, I can and will be
severely punished.
✓ Owner's Initials *PM*

I, as owner and applicant **900 HDP, LLC** and as contractor **McHUGH CONST. COMP.** understand that if I exceed, or allow anyone else
to exceed, the scope of this building permit, I can have any permit revoked; be ordered to stop all work on the project; fined up to $5,000 per day; imprisoned for up to
six months; required to do up to 100 hours of community service; required to tear down at my own expense all completed work; and, in addition to any other penalties
provided by law, required to reimburse the city up to three times any damages incurred for providing any false or inaccurate information in this building permit application.
✓ Owner's Initials *PM*

I, as owner and applicant **900 HDP, LLC** and as contractor **McHUGH CONST. COMP.** understand that all construction
work under this proposed permit must conform to the requirements of the Chicago Building Code and, if it does not, I acknowledge that I can and will be severely punished.
✓ Owner Signature *900 HDP, LLC By: Patel Mu VP*
Tenant Signature (if applicable)
Contractor Signature (if applicable)
Name of the property owner as it appears on the title to the property **900 HDP, LLC**
If you are a real estate developer, license number required. Lic #:
Address **900 NORTH MICHIGAN AVENUE SUITE 1400 CHICAGO, ILLINOIS 60611**
Phone **(312) 915-1934**
E-Mail **meara @ jmb.com (PAT MEARA)**
Emergency Contact name and phone **PAT MEARA (312) 915-1934**

## CERTIFICATION BY OWNER AS APPLICANT

I, as owner and applicant **900 HDP, LLC** hereby certify that the statements in this application are true. I understand that any false
or inaccurate information contained in this permit application may result in revocation of the building permit. In addition to any other penalties provided by law. A false
statement of material fact made on this application may violate federal, state and/or local law, and may subject any person making such a statement to a range of civil and
criminal penalties, fines, and an award to the City of Chicago of up to three times any damages incurred. In addition, persons who submit
false information are subject to denial of the requested City action.
✓ Owner Signature **900 HDP, LLC BY: Patel Mu VP**
Tenant Signature (if applicable)
Name of the property owner's agent who controls or directs the management or disposition of a building or premises
**FOUR SEASONS HOTELS AND RESORTS**
Address **1165 LESLIE STREET TORONTO, ONTARIO, CANADA M3C 2KB**
Phone **1 (416) 449-1750**
E-Mail **hans.willmann @ fourseasons.com CONTACT: HANS WILLIMANN (312) 649-2800**
Name of the Tenant as it appears on the lease agreement **900 HOTEL VENTURE, LLC**
Address **900 NORTH MICHIGAN AVENUE SUITE 1400 CHICAGO, IL 60611**
Phone **(312) 915-1934**
E-Mail **meara @ jmb.com (PAT MEARA)**

## CERTIFICATION BY EXPEDITOR

I, as Expeditor **N.A.** hereby certify that the statements in this Application are true. I understand that any false or
inaccurate information contained in this permit application may result in revocation of the building permit in addition to any other penalties provided by law.

Signature of Expeditor
Address

Telephone number                    Expeditor #
Date

## CERTIFICATION BY DESIGN PROFESSIONAL

I, **TOMOO FUJIKAWA** certify that all information contained in this application that is designated by an asterisk (*) is complete and
accurate, to the best of my knowledge.

Signature of Licensed Architect or Licensed Engineer of Record          Date **10/18/2006**

**#001-014499**
License number

A false statement of material fact made on this Application may violate federal, state and/or local law, and may subject any person making such a statement to a range of civil
and criminal penalties, such as a period of incarceration, fines, and an award to the City of Chicago of up to three times any damages incurred. In addition, persons who
submit false information are subject to denial of the requested City action.

EXHIBIT D

10

24. When making said application, Defendant and others acting in its behalf and subject to its direction, management and control intentionally, clandestinely and fraudulently concealed from the Chicago Building Construction department Defendant's plans to install 136 sliding glass bathroom doors.

25. In response to said fraudulent application, the Chicago Building Construction department issued Permit No. 100153105 a copy of which is attached below as EXHIBIT E.



# Department of Construction and Permits
## BUILDING PERMIT

Permit No.   100153105        Issued   12/20/2006

For Work at:   120 E DELAWARE PL

**RECEIVED**

JAN - 9 2007

FUJIKAWA JOHNSON
GOBEL ARCHITECTS

Description of permitted work:
Renovation of the Four Seasons Hotel to include patching of drywall, replacement of existing bathroom lavatories (same location), replacement of existing light fixtures and addition of picture lights at floors 32 through 46 only.

COPY

In an Emergency Contact: 900 HDP, LLC  (312)915-1934 x

Richard M. Daley
Mayor

Owner:
900 HDP, LLC
900 N MICHIGAN AVE
CHICAGO, IL 60611-
(312)915-1934 x

Contractor:
JAMES MCHUGH CONSTRUCTION CO
1737 S MICHIGAN AVE
CHICAGO, IL 60616
(312)986-8000

Richard L. Rodriguez
Executive Director

Original Permit must be displayed on job site at all times; Copies NOT allowed! Plans must be kept on site during construction. Permit is NOT transferable. Any changes in contractor or deviation from approved plans must be approved by the Department of Construction and Permits. Permit may be revoked for violation of any of the above provisions or other applicable ordinance.

A Certificate of Occupancy may be required before occupancy. Call (312) 744-2829 for more information.

THIS DOCUMENT HAS BLACK PRINTING OVER A BLUE AND PINK RAINBOW BACKGROUND ON WHITE PAPER.

EXHIBIT E

26. Said Building Permit did not permit installation of sliding glass bathroom doors.

27. Shortly after said Building Permit was issued and conspicuously posted in Defendant's hotel, Defendant's management level personnel knowingly approved of, and consented to, the

unlawful installations of sliding glass doors in violation of said Building Permit being committed by Defendant and others acting in Defendant's behalf and subject to its management, direction and control.

## DEFENDANT VIOLATED THE ILLINOIS SAFETY GLAZING MATERIAL ACT

28. The Illinois Safety Glazing Materials Act, 430 ILCS 60, designates sliding glass bathroom doors as hazardous locations and imposes various duties and obligations upon persons who install, cause to be installed, or consent to the installation of sliding glass doors that do not comply with said Act, violations of which Act are misdemeanors.

29. Said Act provides in part:

> Sec. 2.2.
>
> "Hazardous locations" means those installations, glazed or to be glazed in commercial and public buildings, known as framed or unframed glass entrance doors; and those installations, glazed or to be glazed in residential buildings and other structures used as dwellings, commercial buildings, and public buildings, known as **sliding glass doors,** storm doors, shower doors, bathtub enclosures and fixed glazed panels adjacent to entrance and exit doors…"
>
> Sec. 4. Safety glazing materials required.
>
> "No person, within the State of Illinois, shall knowingly sell, fabricate, assemble, glaze, **install, consent or cause to be installed** glazing materials other than safety glazing materials in, or for use in, any hazardous location.

30. Under said Act, safety glazing materials must meet certain minimum specifications, such as the test requirements of ANSI Standard Z-97.1-1966, which are described in 16 C.F.R. 1201 et seq.

31. Said regulations provide that when safety glazing materials break, the weight of the ten largest pieces of broken glass must not exceed the weight of 10 square inches of the original material.

32. In fact, the actual size and weight of several large pieces of broken glass caused by the explosion of the sliding glass bathroom door in suite 3627 on April 28, 2007, and in other suites on other dates before and after April 28, 2007, far exceeded the legal maximum.

33. Management level personnel of Defendant and others acting in its behalf had acquired actual knowledge, before April 28, 2007, that when many of the newly installed sliding glass bathroom doors exploded, the size and weight of many pieces of broken glass far exceeded the legal maximum.

34. In violation of the aforesaid provisions of said Act, management level personnel of Defendant acting within the scope of their employment, and others acting in behalf of Defendant, and in furtherance of the objectives of Defendant, knowingly, repeatedly, maliciously and intentionally installed, caused to be installed, re-installed and consented to the installation of glazing materials in said hotel in violation of said Act, and in complete disregard of the safety of guests such as Plaintiff.

35. Said Act also provides in part:

> Sec. 3. Labeling required.
>
> (A) Each light of safety glazing material manufactured, distributed, imported or sold for use in hazardous locations or installed in such a location within the State of Illinois shall be

*permanently labeled by such means as etching, sandblasting, firing*

*of ceramic material on the safety glazing material or by other*

*suitable means. The label shall indicate the labeler, whether*

*manufacturer, fabricator or installer, the nominal thickness, the*

*type of safety glazing material, the fact that the material meets*

*the test requirements of ANSI Standard Z-97.1-1966 and such further*

*requirements as may be adopted by the Department of Labor.*

> *The label must be legible and visible after installation.*

36. In violation of the aforesaid labeling requirements of said Act, management level personnel of Defendant and others acting on behalf of Defendant in furtherance of its revenue generating agenda, knowingly, repeatedly and intentionally installed, caused to be installed, and consented to the installation of glazing materials other than safety glazing materials, which glazing materials were not labeled in accordance with said Act.

## DEFENDANT VIOLATED THE CHICAGO MUNICIPAL CODE

37. The Municipal Code of the City of Chicago provides in part:

> **13-124-350  Safety glazing materials – Required – Where.**
>
> *All glazed doors, and any glazed panel more than 18 inches in width immediately adjacent to any door wherein the sill of such glazed panel is less than 24 inches above the floor shall be considered "hazardous locations" and shall be glazed with safety glazing materials. Glazed doors shall include, among others, the following: sliding glass doors, storm doors, shower doors and bathtub enclosures.*
>
> **13-124-360  Safety glazing materials – Defined.**

14

*Safety glazing materials are materials so constructed, treated or combined with other materials as to minimize the likelihood of accidental cutting and piercing injuries resulting from human contact and breakage of the glazing material. They shall not support combustion and may be either transparent or nontransparent.*

**13-124-370  Safety glazing materials – Standards.**

*Wired glass, tempered glass, laminated glass and rigid plastics, which meet the test requirements of the American National Standards Institute (ANSI) Standard ANSI-Z-97, 1-1966 are classified as safety glazing materials.*

**13-32-120  Construction contrary to permit – Stop work order.**

*It shall be unlawful for any owner, agent, architect, structural engineer, contractor, or builder engaged in erecting, altering, or repairing any building, structure or portion thereof to make any departure from the drawing or plans, as approved by the building commissioner, of a nature which involves any violation of the provisions of this Code on which the permit has been issued. Any such departure from the approved drawings and plans involving a violation of requirements, shall operate to void the permit which has been issued for such work.*

38. Management level agents, servants, contractors and others acting on behalf of Defendant under its direction and subject to its control, while acting in furtherance of the objectives of Defendant, without permission from the City of Chicago, knowingly, fraudulently, maliciously and deceptively installed, caused to be installed, and consented to the installation of poor quality, illegal, hazardous, dangerous, non-labeled, sliding glass bathroom doors made of glass imported from a foreign Country where it was made by an unknown

manufacturer, according to unknown specifications, and which did not pass breakage tests
necessary to ascertain that the glass complied with the Building Code of the City of Chicago.

## DEFENDANT INTENTIONALLY EXPOSED PLAINTIFF TO KNOWN DANGER

39. After completing said unlawful renovations and returning said 136 remodeled suites to
service, management level personnel of Defendant possessed actual knowledge of what
caused the explosions of sliding glass bathroom doors.

40. After returning said 136 remodeled suites to service, Defendant management level personnel
willfully, intentionally and maliciously abstained from having its employees or others
perform safety inspections of sliding glass bathroom door on a daily basis.

41. Nevertheless, Defendant management level personnel placed Plaintiff and other guests in
said 136 remodeled suites without warning them of said dangerous conditions

## DEFENDANT WILLFULLY IGNORED WARNINGS OF KNOWN DANGER

42. On April 29, 2007, Plaintiff's father, a professional engineer, analyzed the cause of the
explosion of April 28, 2007 and explained it to Defendant's management personnel.

43. Plaintiff's father followed up by sending Defendant's management level personnel the
following email messages warning them that future explosions were likely to occur and
would cause serious personal injuries if Defendant did not take steps to correct the problems.

*Hello Mr. or Ms. Zitkus: ... "...I am urging you and others to take immediate steps to prevent an horrible tragedy, such as a child being maimed or killed when another glass door shatters..."*

*"Have you sent voice mail messages to all guest rooms alerting them to the known danger? Have you posted any notices on the glass doors? Have you notified all arriving guests when they check in? Have you dispatched maintenance personnel to check and tighten the screws that hold the "stops" in the upper track in place?.....Please address these matters with a sense of urgency."*

—————————————————

*"Good Morning Ms. Silverman: Please advise what steps, if any, your hotel has taken to alert your guests to the dangerous condition of the glass doors in the bathrooms of your guest rooms."*

44. Defendant willfully, maliciously and intentionally ignored said warnings, and continued exposing guests to the known dangers of exploding sliding glass bathroom doors, through September 2, 2007 when another sliding glass bathroom door exploded causing a young boy to be injured.

## DEFENDANT FAILED TO IMPLEMENT SAFETY MEASURES PROMPTLY

45. Management level personnel of Defendant and others acting in its behalf in furtherance of the objectives of Defendant, knowingly, maliciously, and intentionally abstained from implementing many corrective safety measures that could have been taken to prevent said sliding glass bathroom doors from exploding and injuring Plaintiff and other guests. Said safety measures included, but were not limited to:

   a. replacing said sliding glass bathroom doors with material that complied with the law;

   b. replacing the oversized door handles with smaller handles;

   c. posting of warning signs on said sliding glass bathroom doors;

   d. placing messages on the telephones of said suites warning guests of the dangerous condition of said sliding glass bathroom doors;

   e. causing maintenance, or housekeeping or other personnel to check the safety of said sliding glass bathroom doors on a regular basis;

   f. installing effective movement stoppers or improving existing safety stoppers for said sliding glass bathroom doors.

46. Management level agents, servants and employees of Defendant, and others acting in its behalf in furtherance of Defendant's objectives intentionally, outrageously, and maliciously abstained from implementing said corrective measures because of the reduction in revenue generating capacity that would have resulted.

## DEFENDANT'S MANAGEMENT PERSONNEL CAUSED PLAINTIFF'S
## NAKED BODY TO BE EXPOSED TO DEFENDANT'S MALE EMPLOYEES

47. Shortly after the explosion of April 28, 2007 in suite 3627, Plaintiff stood naked in her

    bedroom, unable to clothe or otherwise cover herself because of the various cuts to her body.

48. Her sister called the front desk for help, specifically insisting that female help be dispatched.

49. Defendant management level personnel sent two men who entered the room unannounced,

    without being invited, and gawked at Plaintiff's naked and bloody body.

## DEFENDANT DESTROYED EVIDENCE

50. The explosion of the sliding glass bathroom door in suite 3627 on April 28, 2007, and similar

    explosions at other times before and afterward, produced many pieces of broken glass which

    failed to comply with the law of the City of Chicago, State of Illinois and U.S.A.

51. Management level personnel of Defendant and others acting on its behalf in furtherance of its

    revenue generating objectives quickly and intentionally "covered-up" evidence of the causes

    and results of said explosions by destroying, concealing or disposing of the aforesaid large

    pieces of broken glass, and other crucial items of physical evidence.

52. At some unknown time between April 28, 2007 and May 11, 2007, management level

    personnel of Defendant, and others acting in behalf of Defendant and in furtherance of its

    revenue generating objectives, removed from suite 3627 the upper support track shown

    below in EXHIBIT F,

19



EXHIBIT F

and the floor-mounted lower guide track, shown below in EXHIBIT G.



EXHIBIT G

53. By May 11, 2007, Defendant made it appear as though there never had been any sliding glass bathroom door in said suite, as shown in EXHIBIT H.



**EXHIBIT H**

54. By disposing of said evidence, management level personnel of Defendant and others acting on its behalf in furtherance of the objectives of Defendant, deprived Plaintiff of the opportunity to have said glass and accessories tested by experts who are capable of corroborating the extreme extent to which said glass violated the law.

55. The destruction or disposition of said physical items and the other obstructive and cover-up tactics of the Defendant and others acting in its behalf substantially impede Plaintiff's ability to gather and present all the facts and the whole truth into evidence.

56. The foregoing described willful, malicious, intentional indifference and the actions of management level personnel of the Defendant and others acting in its behalf within the scope of their employment in furtherance of its financial objectives were outrageous, willful, reckless, wanton, and criminal.

## DEFENDANT'S FINANCIAL STATUS

57. The financial status of the Defendant is one of the factors to be considered in determining the amount of punitive damages to be awarded.

58. In the year 2007, Bill Gates and Saudi Prince Alwaleed Bin Talal Bin Abdulaziz Alsaud, paid $3.4 billion dollars to purchase a 95% ownership interest in defendant Four Seasons Hotels, Limited.

59. The Defendant should be ordered to pay meaningful and substantial punitive damages in an amount proportional to Defendant's net worth.

WHEREFORE, in view of the financial status of the Defendant and its extended course of conspiratorial, criminal, fraudulent, clandestine, reckless, willful, wanton conduct and outrageous and reckless indifference to the highly unreasonable risk of harm Defendant caused Plaintiff and others, Plaintiff claims punitive damages in excess of $75,000.00 and respectfully requests that the actual amount of said punitive damages be proportional to Defendant's financial status and be sufficient to:

      a.   impose meaningful punishment upon Defendant; and to

      b.   deter future outrageous and criminal misconduct by Defendant.

JURY TRIAL DEMANDED

Respectfully submitted

*Diane Parker*   5-13-12

/s/ Diane Parker          May 13, 2012

Diane Parker, Plaintiff, pro se
114 Snyder Road
Venetia, PA  15367
412-596-3692
dp@johnparker.com

THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS·

EASTERN DIVISION

Diane Parker,                                      :

       Plaintiff                                :

       vs.                                      :   CASE N0. 12cv3207

Four Seasons Hotels, Limited              :   JUDGE   HARRY D. LEINENWEBER

       Defendant                             :   MAGISTRATE   SIDNEY I. SCHENKIER

## NOTICE TO PLEAD

## TO THE DEFENDANT:

You are required to reply to the allegations of the foregoing AMENDED COMPLAINT

within 21 days after receiving a copy of it or a default judgment will be entered against you.

*Diane Parker* 5-13-12

~~/s/~~ Diane Parker      May 13, 2012

Diane Parker
114 Snyder Road
Venetia, PA 15367
412-596-3692
dp@johnparker.com

THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| Diane Parker, | : | |
| Plaintiff | : | |
| vs. | : | CASE N0. 12cv3207 |
| Four Seasons Hotels, Limited | : | JUDGE   HARRY D. LEINENWEBER |
| Defendant | : | MAGISTRATE   SIDNEY I. SCHENKIER |

## VERIFICATION

Plaintiff affirms and verifies under penalty of law that the foregoing allegations of this

AMENDED COMPLAINT are true and correct and are based upon documentary evidence

Plaintiff obtained in previous litigation. Plaintiff further affirms that she will be able to prove

all of the foregoing allegations of this AMENDED COMPLAINT.

*Diane Parker*    5-13-12

Diane Parker         May 13, 2012

Diane Parker
114 Snyder Road
Venetia, PA  15367
412-596-3692
dp@johnparker.com

THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

Diane Parker,                          :

        Plaintiff                :

        vs.                    :     CASE N0. 12cv3207

Four Seasons Hotels, Limited      :     JUDGE    HARRY D. LEINENWEBER

        Defendant          :     MAGISTRATE   SIDNEY I. SCHENKIER

## CERTIFICATE OF SERVICE

I, Diane Parker, the undersigned Plaintiff, do hereby certify that I served a copy of the foregoing

Amended Complaint upon Frank DeBoni, counsel for the Defendant, by emailing a copy to him

and also by sending a paper copy by US Mail, postage prepaid on May 13, 2012,

*Diane Parker*   5-13-12

/s/ Diane Parker         May 13, 2012

Diane Parker
114 Snyder Road
Venetia, PA 15367
412-596-3692
dp@johnparker.com