IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIANE PARKER,

                    Plaintiff,

          v.

FOUR SEASONS HOTELS, LTD.,

                    Defendant.

Case No. 12 C 3207

Hon. Harry D. Leinenweber

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are a number of discovery-related motions, including: (1) Defendant Four Seasons Hotels, Ltd. (Hereinafter, "Defendant" or "Four Seasons") Motion to Quash, for Entry of a Protective Order and for Sanctions (ECF No. 39); (2) Third Parties 900 Hotel Venture, LLC and 900 HDP, LLC's (hereinafter, collectively, "900 Venture") Motion to Quash (ECF No. 46); (3) Third Party Pat Meara's Motion to Quash and for a Protective Order (ECF No. 67); (4) Third Party William H. Gates III's ("Gates") Motion to Quash and for a Protective Order (ECF No. 42); (5) Plaintiff's Motion for Sanctions (ECF No. 76); and (6) Plaintiff's Motion for Reconsideration of Two Court Orders (ECF No. 77). For the reasons stated herein, Defendant's Motion to Quash and for Protective Order is granted in part and denied in part. 900 Venture's Motion is granted in part and denied in part. Gates' and Meara's Motions are granted. Plaintiff's Motion to Reconsider is

granted in part and denied in part. Plaintiff's Motion for Sanctions is denied.

## I.  **BACKGROUND**

This action began as a negligence suit in Cook County Court Law Division on April 21, 2009. Plaintiff was a guest in Defendant's hotel when a sliding glass shower door shattered and injured her. Significant discovery took place in the state court action prior to Plaintiff taking a voluntary non-suit and refiling here on April 30, 2012. Despite the discovery that had taken place in the state court matter, on August 21, 2012, Plaintiff filed a motion requesting an extensive discovery plan in this action. Her plan included six phases of discovery and the inspection of thirty hotel rooms with sliding glass doors.

On September 28, 2012, this Court entered an Order (the "September Order") that sought to balance the burden that Plaintiff's excessive plan would cause while giving Plaintiff the opportunity to seek information related to new allegations in her Amended Complaint. These new allegations raised for the first time the issue of punitive damages. Defendant was ordered to produce two bankers boxes of documents referenced within their response. The Court rejected Plaintiff's plan to inspect thirty rooms at Defendant's hotel because Plaintiff gave no justification for why such an inspection was necessary. Plaintiff was ordered to "limit her discovery requests to new issues raised in the Amended

Complaint, those topics that could not be discovered earlier, or those request[s] that were unreasonably denied or ignored by Defendant." *See* 9/28/12 Order at 3, ECF No. 35. The Court also warned Plaintiff that she would need to be able to demonstrate "how each and every request she now makes was either made and unfairly denied in state court or how it relates to new issues." *Id.* The Court encouraged Plaintiff to retain counsel or consult the Court's *Pro Se* Help Desk, as she "must still obey the Rules of Civil Procedure . . . [as] missteps in this regard could lead to a loss by Plaintiff or sanctions." *Id.*

What followed appears to be a gross abuse by Plaintiff of the Court's September Order allowing her to pursue limited additional discovery, as well as a failure on her part to heed the Court's warnings about adhering to the Rules of Civil Procedure. Plaintiff issued additional document requests to Defendant and subpoenaed numerous third parties, including some with improper service and outside of this Court's subpoena power. Apparently, Plaintiff has pursued this course while failing to review the two boxes of documents Defendant made available to her pursuant to the September Order. Even more troubling, despite having her request to inspect thirty hotel rooms explicitly denied, Plaintiff attempted repeatedly to compel such inspections. Defendant has stonewalled all of Plaintiff's additional discovery requests by generically stating that they are all outside the scope of the September Order.

Defendant and some of the third parties move to quash Plaintiff's outstanding discovery. Fact discovery closed on March 31, 2013.

## II.  **LEGAL STANDARD**

Discovery is not without its limits. Rule 26 states that a court, "on motion or on its own, must limit the frequency or extent of discovery otherwise allowed" if it determines that (1) the discovery sought is unreasonably cumulative or can be obtained from a source that is more convenient; (2) that the party seeking discovery has had ample opportunity to obtain the information; or (3) the burden of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(2)(C). Rule 26 also allows a court to enter a protective order, for good cause shown, forbidding inquiry or limiting the scope of discovery into certain matters. FED. R. CIV. P. 26(c)(1).

Discovery pursuant to a Rule 45 subpoena is not unlimited. *Widmar v. Sun Chem.,* No. 11 C 1818, 2012 U.S. Dist. LEXIS 89253 at *4 (N.D. Ill. June 28, 2012). Under Rule 45, a court is required to quash a subpoena under various circumstances, including when it requires a non-party to travel more than 100 miles from where he resides, is employed, or regularly transacts business, as well as when the subpoena subjects the recipient to undue burden. FED. R. CIV. P. 45(c)(3)(a).

- 4 -

### III.  **ANALYSIS**

#### A.  Defendant's Motion to Quash, For Entry of Protective Order, and for Sanctions Against Plaintiff (ECF No. 39)

##### *1. Local Rules 7.1 and 37.2*

The Court first notes that Plaintiff filed two briefs responding to Defendant's motion (ECF Nos. 48, 50), and thus failed to comply with Local Rule 7.1's requirement that no brief exceed 15 pages without approval from the Court. The Court will accommodate Plaintiff and consider both responses. However, failure by either party to abide by Rule 7.1's page limit in the future without permission may result in the Court refusing to consider the brief.

Plaintiff is not the only one having difficulty following the Court's rules. Defendant, in moving to quash, failed to abide by Local Rule 37.2, which states in part:

> [the] court shall hereafter refuse to hear any and all motions for discovery and production of documents under Rule 26 through 37 of the Federal Rules of Civil Procedure, unless a motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's.

N.D. Ill. L.R. 37.2. This rule encourages resolution of discovery disputes without judicial involvement. *Biedrzycki v. Town of Cicero*, No. 04 C 3277, 2005 U.S. Dist. LEXIS 16423 at *6 (N.D. Ill. Aug. 8, 2005). Defendant failed to provide a statement that any attempt was made to resolve these discovery issues. Given the

mandatory language of Local Rule 37.2, the Court could deny Defendant's motion. *Id.* at *7. However, the Court will excuse Defendant's failure, as well.

### 2. *Plaintiff's Additional Rule 34 Document Requests*

The Court's September Order was clear that any additional discovery Plaintiff sought had to involve: (1) new issues raised in the Amended Complaint; (2) those topics that could not be discovered earlier; or (3) information that Defendant had unreasonably failed to provide. *See* 3/28/12 Order at 3, ECF No. 35. To justify her extensive discovery, Plaintiff now asserts that the "major issue is the amount of **punitive damages** to be awarded." Pl.'s 11/6 Resp. at 1, ECF No. 48. Indeed, she states that her document requests "must necessarily be broad and detailed" because she is unaware of Defendant's position with respect to "the major issue," punitive damages. *Id.* Plaintiff thus served on Defendant two very similar document requests within a week of one another. As Plaintiff states she intended the latter set of requests to amend the former, the 44 document requests (excluding subsections) attached as Exhibit K to Defendant's Motion to Quash are the requests at issue. *See* Defs.' Mot. to Quash Ex. K, ECF No. 39 PageID # 279.

Defendant makes no attempt to provide the Court with any specific objections to the document requests. Ironically, it makes the general objection that Plaintiff uses punitive damages as her

- 6 -

general justification for the requests. This was not helpful. Plaintiff, to her credit, did what Defendant would not by attempting to justify each document request. Unfortunately, most of her requests seek information that is beyond the scope of the September Order, irrelevant, or otherwise burdensome.

*a.  Valid Document Requests*

Plaintiff claims all of her requests are aimed toward punitive damages. There are a few ways in which the new allegations in her Amended Complaint could involve punitive damages. First, she claims that Defendant and others fraudulently concealed plans to install the type of sliding glass door that injured her when it applied for its building permit. *See* Am. Compl. ¶¶ 23-27. Second, Plaintiff claims that Defendant's use of the sliding glass doors violate the Illinois Safety Glazing Materials Act, 430 ILCS 60, and the Chicago Municipal Code. *See* Am. Compl. ¶¶ 28-38. Evidence concerning the regulatory or criminal penalties to which a defendant exposed itself can be helpful in considering punitive damages. *See, Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 678 (7th Cir. 2003). Third, Defendant's net worth is relevant to punitive damages. *Baldonado v. Wyeth,* No. 04 C 4312, 2012 U.S. Dist. LEXIS 59512 at *11-12 (N.D. Ill. Apr. 30, 2012).

In light of the above allegations, Requests 12, 13, 26, 27, 28, 42, and 43 are reasonable requests. The Court makes special note of Request 28, which seeks "[a]ll Incident Reports that refer

to breakage of said [sliding glass doors]." Defs' Mot. to Quash
Ex. K, ECF No. 39 PageID # 285. The Court stated in its September
Order that such a report struck the Court as "highly relevant."
*See* 9/28/12 Order at 2, ECF No. 35. The Court reiterates this
belief and again orders any such reports be produced.

A few of Plaintiff's requests are valid if restricted.
Requests 36 and 39 seek information relevant to Defendant's net
worth, though both should be limited only to Defendant and only for
2012.

All of the above requests appear to be valid attempts to
discover information relevant to Plaintiff's new allegations. That
Defendant made no attempt to respond to these, or provide a
specific reason as to why it should not, is troubling. Defendant
has thirty (30) days from the entry of this Order to produce any
documents that are responsive to these requests.

### b. All Remaining Document Requests

All of Plaintiff's remaining requests are either beyond the
scope of the September Order, are not narrowly tailored for the
discovery of relevant information, and/or are overly burdensome.
As such, they are all denied.

The Court limited Plaintiff's discovery to issues that could
not have been discovered previously and to new issues raised in
Plaintiff's Amended Complaint. Several of Plaintiff's document
requests seek documents that frankly could or should have been

requested during Plaintiff's state court action. For example, Request #31 asks for "[a]ll documents containing information of all safety measures that were taken to minimize the likelihood of personal injuries to guests as a result of breakage of said [sliding glass doors]." Def.'s Mot. to Quash Ex. K, ECF No. 39 PageID #286. That request does not involve Plaintiff's new allegations and could have been made earlier. Many other requests suffer the same fatal flaw.

Several of the requests involve Defendant's interactions with its parent companies or the value of its parent companies or owners. Plaintiff seeks such information because it will "facilitate piercing corporate veils." *See, e.g.,* Pl.'s 11/21 Resp. at 26, ECF No. 50. Neither type of information is appropriate in this case. In an action to pierce the corporate veil, a plaintiff must allege "(1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that an adherence to the fiction of a separate corporate existence would promote injustice or inequitable consequences." *Laborers' Pension Fund v. Lake City Janitorial, Inc.*, 758 F.Supp.2d 607, 618-619 (N.D. Ill. Dec. 27, 2010). Even construed liberally, Plaintiff's Amended Complaint does not contain such allegations.

The Amended Complaint also does not name any of Defendant's parents or investors as defendants. Plaintiff, however, seeks

documents indicating the net worth of individuals who own or control Defendant. Plaintiff seeks such information because she claims "[t]he net worth of the defendant is relevant to the amount of punitive damages that should be awarded." *See, e.g.,* Pl.'s 11/21 Resp. at 5, ECF No. 50. Plaintiff is correct that under Illinois law, the net worth of a **defendant** is relevant to the amount of punitive damages that should be awarded. *See Baldonado,* 2012 U.S. Dist. LEXIS 59512 at *11-12. But Defendant's parents or owners are not defendants in this case. It is a general principle of corporate law that a parent corporation is not liable for the acts of its subsidiaries. *United States v. Bestfoods,* 524 U.S. 51, 61 (1998). Absent a claim of piercing the corporate veil, the wealth of a parent corporation is not relevant to determining the appropriateness of punitive damages. *See, e.g., Schutter v. Wyeth, Inc.,* No. 05 C 988, 2012 U.S. Dist. LEXIS 127082 at *20 (N.D. Ill. Feb. 24, 2012). Thus, Plaintiff's requests aimed at Defendant's owners and investors are beyond the scope of the September Order.

Plaintiff's other requests suffer from a variety of other shortcomings. For example, Plaintiff admits Requests 19 and 22 are irrelevant, and that 32 is a "catch-all" that this Court deems overly broad. She admits that Requests 37 and 38 are publicly filed documents. As such, she is capable of getting those documents without Defendant's assistance. And while evidence of criminal or regulatory penalties can be relevant for punitive

damages, it should be limited to the penalties to which Defendant may be exposed because of the sliding glass door that injured Plaintiff. Plaintiff seeks extensive information regarding all of the hotel rooms that had sliding glass doors (*see, e.g.,* Request 15(a)-(j)), which are far broader requests than fit her claim.

### 3. Plaintiff's Resumed Attempts to Inspect Guest Rooms

As clear as the Court was in instructing Plaintiff what discovery she could seek, it was equally clear as to what she could not. The Court stated explicitly that "Plaintiff's failure to enunciate *why* inspection of other rooms is necessary or relevant means the Court must deny the request [to examine 30 hotel rooms] in light of the burden it would put on Defendant's business and customers." 9/28/12 Order at 2, ECF No. 35. This was not a suggestion, recommendation or request on the Court's part; it was an Order instructing Plaintiff that she could not pursue such discovery, the violation of which makes her subject to sanctions. Yet, in direct contradiction of the September Order, Plaintiff sought to compel Defendant and others to allow her to inspect rooms with sliding glass doors. Regardless of her status as a *pro se* plaintiff, such blatant disregard for the Court's authority is unacceptable. In light of Plaintiff's failure to follow the September Order, the Court grants Defendant's Motion for a Protective Order preventing Plaintiff from any further attempts to

conduct room inspections. So there is no confusion, if Plaintiff makes any such attempt, either through Defendants or through a third party, she will be found in contempt and subject to sanctions.

### 4. *Defendant's Request to Quash Third Party Subpoenas*

Defendant also seeks to quash numerous subpoenas issued by Plaintiff to third parties. Specifically, Defendant asks this Court to quash subpoenas Plaintiff issued to non-parties Arnie Harris, Neil Bower, Sophie Martinez, Suzanne Jacobs, 900 Hotel Venture, LLC and 900 HDP, LLC, Isadore Sharp, James DeFily and William Gates.

"Ordinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." *Kessel v. Cook County*, No. 00 C 3980, 2002 U.S. Dist. LEXIS 4185 at *5-6 (N.D. Ill. Mar. 13, 2002). Defendant claims it has standing to object to the non-party subpoenas because (1) service of the subpoenas on witnesses outside of this state (or country) are improper under the Federal Rules of Civil Procedure; and (2) the requests made in the subpoenas violate the September Order.

Defendant cites no cases in support of its argument that it has standing because the subpoenas directed to witnesses outside of this state violate the Federal Rules of Civil Procedure. The Court

finds *Square D Co. v. Breakers Unlimited, Inc.* instructive on this issue. *Square D Co. v. Breakers Unlimited, Inc.,* No. 07-cv-806-WTL-JML, 2009 U.S. Dist. LEXIS 49317 (S.D. Ind. June 11, 2009). In that case, plaintiff sought to quash trial subpoenas issued to two individuals outside of the scope of the court's subpoena power under Federal Rule of Civil Procedure 45. *Id.* at *2. The court stated that, as a "technical matter, the motion is easily resolved." *Id.* The subpoenas were not directed at plaintiff, and though a party may have standing to quash a subpoena addressed to another if it infringes on the movant's legitimate interests, plaintiff did not assert that its own rights would be violated if the subpoenas were enforced. *Id.* Instead, the sole basis of the motion to quash was that the two witnesses would have to travel more than 100 miles to attend trial. *Id.* The court found that plaintiff did not have standing to raise that issue on behalf of the non-parties, and the motion to quash was denied. *Id.* at *2-3. The Court noted that had the non-party witnesses moved to quash the subpoenas themselves, it would have granted the motions. *Id.* at *3.

Similarly, it is clear that some of the subpoenas were served on individuals who are outside this Court's subpoena power. For example, Plaintiff served Isadore Sharp in Toronto, Canada. Not only is Canada outside of the Court's subpoena power, but Plaintiff admits she is aware of that fact. Pl.'s 11/21 Resp. at 3, ECF

- 13 -

No. 50 ("The key documents that Plaintiff needs might be stored in Canada, completely beyond reach of the subpoena power of this Honorable Court.")  Defendant does not argue that it has some privilege or legitimate reason to contest the subpoena to Sharp, only that the subpoena violated the Federal Rules of Civil Procedure.  That is not enough to confer standing to object to the subpoena.  Had Sharp brought his own Motion to Quash, the Court would have granted it.  However, since Plaintiff admits to being aware of the Court's subpoena power limitations, it warns her that if she tries to compel compliance with any improper subpoena she issued, the Court will sanction her.

With regard to Defendant's second argument, Defendant cites no case involving a party seeking to quash a non-party subpoena on the grounds it sought materials beyond the subject matter limitations of a previous order.  Instead, Defendant bases its standing argument on *Phipps v. Adams,* No. 11-cv-147-GPM-DGW, 2012 U.S. Dist. LEXIS 105376 (S.D. Ill. July 30, 2012).  In that case, the court allowed a plaintiff to quash a third party subpoena issued two months beyond an order ending discovery.  *Id.* at *6-7.  The court found that the plaintiff "has standing to seek enforcement of the order because he has an interest in the administration of the legal proceeding."  *Id.* at *7.

While the reasoning in *Phipps* is sound for the facts of that case, the facts here are different enough that extending that

- 14 -

reasoning is problematic. The law is clear that generally, a party does not have standing to quash a subpoena to a non-party. Instead, it is usually up to the non-party to bring its own motion to quash. Instances that fall under the "personal right or privilege" exception and confer standing on a party include the assertion of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party. *See, e.g., Countryman v. Cmty. Link Fed. Credit Union*, No. 11-cv-136, 2012 U.S. Dist. LEXIS 47681 (N.D. Ind. Apr. 3, 2012) (assertion of privacy interest can confer standing); *Farmer v. Senior Home Companions of Indiana, Inc.,* No. 8-cv-0379, 2009 U.S. Dist. LEXIS 18557 (S.D. Ind. Mar. 5, 2009) (assertion of interference with a client relationship confers standing); *Minnesota Sch. Bds. Assoc. Ins. Trust v. Employers Ins. Co. of Wausau,* No. 98 C 6285, 1999 U.S. Dist. LEXIS 81 at *4 (N.D. Ill. Jan. 6, 1999) (assertion of privilege confers standing). While not exhaustive, these exceptions demonstrate that there are limited circumstances that allow a party to have standing to contest a third party subpoena. Relevance, burden or service objections fall to the subpoena's recipient to make. *See, e.g., Kessel v. Cook County*, No. 00 C 3980, 2002 U.S. Dist. LEXIS 4185 at *5-6 (N.D. Ill. Mar. 13, 2002); *Biedrzizchi v. Town of Cicero,* 04 C 3277, 2005 U.S. Dist. LEXIS 16423 at *9 (N.D. Ill. Aug. 8, 2005). To grant

standing to a party because it says it has an interest in the "administration of the legal proceeding" would effectively wipe out the rule entirely. Every time a third party received a subpoena, regardless of whether there had been a pre-existing discovery order or not, a party could seek to quash it simply by asserting its objections and stating it had "an interest in the administration of the legal proceeding." *See Phipps,* 2012 U.S. Dist. LEXIS 105376 at *7.

Defendant gives no justification that falls into any exception to the standing rule other than its claim that the subpoenas violate the September Order. The Court finds this insufficient to confer standing to Defendant under these circumstances. In the end, the Defendant is claiming that because the Plaintiff's third party subpoenas exceed the scope of the Court's Order, they are either overly broad or irrelevant. Such objections are for the subpoena recipients to make.

There is one non-party subpoena that Plaintiff issued in which the Court finds Defendant has standing to move to quash. Plaintiff served a subpoena for documents on James DeFily ("DeFily"), Director of Engineering of the Four Seasons Hotel, Chicago and current employee of Defendant. DeFily is a witness under Defendant's control and was presented for a deposition in this case last year. The subpoena contains many similar document requests for Defendant's business records described above. Because

Plaintiff seeks to get Defendant's business records from one of its own employees, the Court finds that Defendant has standing to object to the DeFily subpoena. These document requests are best responded to by Defendant instead of DeFily.

In light of the above, the Court grants Defendant's Motion to Quash Plaintiff's subpoena to James DeFily, but denies its Motion to Quash the other non-party subpoenas. Because the Court finds that Defendant does not have standing to contest the non-party subpoenas Plaintiff issued to everyone other than DeFily, the Court must turn to the non-party motions to quash.

## B. Third Party Motions to Quash

Three of the third parties who received subpoenas from Plaintiff filed their own motions to quash. "In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that 'non-party' status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Robinson v. Morgan Stanley,* No. 6 C 5158, 2010 U.S. Dist. LEXIS 25073 at *6-7 (N.D. Ill. Mar. 17, 2010). Indeed, while parties must accept the burdens of litigation, non-parties have different expectations. *Id.* As such, courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs. *Id.* Thus, in determining whether the recipient of a subpoena is being subjected to undue burden, courts consider a number of factors, including "the person's status as a non-party,

the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Last Atlantis Capital, LLC v. AGS Specialist Partners,* No. 04 C 0397, 05 C 5600, 05 C 5671, 2013 U.S. Dist. LEXIS 7044 at *6-7 (N.D. Ill. Jan. 17, 2013).

### 1. Pat Meara, 900 Hotel Venture, LLC and 900 HDP, LLC Motions to Quash (ECF Nos. 46, 67)

On November 1, 2012, Plaintiff served a subpoena on 900 Venture addressed to Patrick J. Meara, Vice President. 900 Venture moved to quash the subpoena, arguing that it sought documents that were already available to Plaintiff, that previously could have been the subject of discovery, and that were irrelevant. On December 21, 2012, while 900 Venture's Motion to Quash was still pending, Plaintiff served a nearly identical subpoena on Meara himself that also sought his deposition. Meara moved to quash the second subpoena.

With respect to the November 1, 2012 subpoena, many of the requests are duplicative of those directed to Defendant. As such, many of the requests are inappropriate for the same reasons. The Court finds Requests 14, 15, 29, 30, and 31 are reasonable. To the extent documents responsive to these requests have not already been produced, 900 Venture will do so within thirty (30) days from the entry of this Order. Plaintiff will pay reasonable copying costs for such documents. The Court finds the remaining requests either

overly broad, burdensome, irrelevant or previously could have been the subject of discovery and thus invalid.

As for the second subpoena that was served on Meara on December 21, 2012, it is redundant for the most part except it seeks to depose Meara. However, Plaintiff failed to tender any witness fees or travel costs when she served Meara with the subpoena. Failure to provide these required fees is a violation of Federal Rule of Civil Procedure 45(b)(1) and sufficient basis to quash a subpoena. *See, Rotter v. Cambex Corp.,* No. 93 C 4137, 1995 U.S. Dist. LEXIS 8561 at *4 (N.D. Ill. June 19, 1995). Plaintiff offers this Court no explanation for this failure, nor does she address it in any way. The Court warned Plaintiff that she was expected to follow the Rules of Civil Procedure. The Court is also wary of the fact that Plaintiff failed to pay the reasonable copy fees for the two boxes of documents discussed in the September Order, as well of the fact that Meara is a witness Plaintiff has known about for quite some time. Meara's Motion to Quash is granted.

### 2. William Gates' Motion to Quash (ECF No. 42)

Non-party William H. Gates III moves to quash the subpoena issued by Plaintiff on October 26, 2012 as being both defective and overly burdensome. Under Rule 45, the subpoena for the production or inspection of documents must be issued "from the court for the district where the production or inspection is to be made." FED.

R. CIV. P. 45(a)(2)(C). Service via certified mail is not sufficient under Rule 45. *Special Markets Ins. Consultants Inc. v. Lynch*, Case No. 11-C-9161, 2012 U.S. Dist. LEXIS 61088 at *2 n.1 (N.D. Ill. May 2, 2012). Rule 45 also requires that the subpoena may be served within the district of the issuing court, outside the district but within 100 miles of the place specified for production, or within the state of the issuing court if a statute or court rule permits. FED. R. CIV. P. 45(b)(2).

The subpoena is clearly defective under the Federal Rules of Civil Procedure. Contrary to Rule 45, Plaintiff sent, via certified mail, the subpoena to Gates to an address in Washington seeking the production of documents to Plaintiff in Pennsylvania. Washington is clearly outside this District and further than 100 miles away from Pennsylvania. Plaintiff's subpoena was also issued from the Northern District of Illinois instead of a district court in Washington. The subpoena is thus invalid, as it was issued from the wrong court and served improperly. Moreover, even if the subpoena was not defective on its face, it seeks irrelevant information and would clearly subject Gates to an undue burden, contrary to Rule 45(c)(3)(A). For these reasons, the Court grants Gates' Motion to Quash.

### E. Plaintiff's Motion for Sanctions and Motion to Reconsider

On February 10, 2013, Plaintiff filed another Motion for Sanctions (ECF No. 76), and a Motion for Reconsideration of two of

the Court's Orders (ECF No. 77). She filed both Motions without proper notice, in violation of Local Rule 5.3. Rule 5.3 requires that "[e]very motion or objection shall be accompanied by a notice of presentment specifying the date and time on which, and judge before whom, the motion or objection is to be presented." L.R. 5.3. The Court could strike these motions without further consideration for being in violation of the rule. However, the Court, cognizant of Plaintiff's *pro se* status, will consider them this time. The Court puts both parties on notice that any future motions filed in violation of Rule 5.3 will be struck.

### 1. *Plaintiff's Motion for Sanctions (ECF No. 76)*

Plaintiff's motion for sanctions is not the first in this case. Indeed, both parties have requested sanctions for alleged discovery misconduct on the part of their opponent. The parties have not hesitated to sling all manner of unseemly accusations in their filings, from filing false pleadings to improperly interfering with discovery. That ends now. In litigation, credibility is the coin of the realm, and frankly both parties have little change left in their pockets. Both parties are reminded of their obligations not only to adhere to the Federal Rules of Civil Procedure and the Local Rules, but to also maintain a respectable level of professionalism in this Court. The Court denies all pending motions for sanctions, but warns both parties that future misconduct will not be tolerated.

## 2. *Plaintiff's Motion for Reconsideration (ECF No. 77)*

Most of the issues raised in Plaintiff's Motion to Reconsider have been addressed by the present Order. First, Plaintiff seeks to extend fact discovery for three months. She claims the extension is necessary because of Defendant's failure to produce any discovery, as well as third parties refusing to respond to subpoenas due to confusion about the discovery deadline. In light of the Court's significant narrowing of Plaintiff's overbroad discovery in this Order, three months is unnecessary. Plaintiff's request is denied. The parties have thirty (30) days to complete all outstanding discovery in accordance with this Order.

Plaintiff also asks the Court to vacate its January 15, 2013 Order (ECF No. 72) allowing Defendants to depose her treating physicians and experts because it "portrays the appearance of overreaching and impropriety, as though it was the product of oversight or misunderstanding." Pl.'s Mot. to Reconsider. at 6, ECF No. 77. The Court's Order was not oversight or misunderstanding. It authorized Defendant to depose Plaintiff's treating physicians and experts if it chose to do so. To the extent these depositions have not taken place, Defendant again has thirty (30) days from the entry of this Order to take them. Plaintiff's request is denied.

Plaintiff asks the Court to amend another portion of its Order of January 15, 2013. The Order currently reads, in part,

that "Defendant is granted 30 days from the date on which those documents are received in which to answer Plaintiff's Requests to Admit." *See* ECF No. 72. Plaintiff would like to add "the genuineness of said documents" to the end of that sentence. *Id.* at 7. Plaintiff's proposed amendment is unnecessary, as it is clear from the language in rest of the Order that it is referring to Plaintiff's Request to Admit the Genuineness of Documents. Plaintiff's request is denied.

The only request in Plaintiff's Motion to Reconsider that has any merit involves the Court's prior ruling granting Defendant's Motion to Deem Facts Admitted. On December 14, 2012, Defendant moved pursuant to Illinois Supreme Court Rule 216 to have facts deemed admitted. *See* ECF No. 57. Defendant claimed that in the state court action, Plaintiff failed to respond to Defendant's Rule 216 Requests to Admit, and as such, those facts must be deemed admitted. The Court heard Defendant's Motion on January 15, 2013. Plaintiff did not appear during that hearing, and based on Defendant's representations, the Court granted the Motion. Plaintiff filed subsequent responses seeking to establish that she had, in fact, responded to the requests. Plaintiff offered an unsigned, unverified, undated response in support of her contention.

Rule 216 was amended to add several "special requirements" with respect to requests to admit. Specifically, it states that a party must:

> put the following warning in a prominent place on the first page in 12-point or larger boldface type: "*Warning: If you fail to serve the response required by Rule 216 within 28 days after you are served with this document, all the facts set forth in the requests will be deemed true and all the documents described in the requests will be deemed genuine.*"

Ill. Sup. Ct. R. 216(g). This amendment took effect on January 1, 2011. Defendant served its requests to admit on January 28, 2011, yet failed to include the necessary warning of the harsh consequences of failing to respond to the requests. Defendant offered no explanation to the Court for why it failed to include the required language. The Court does not find this omission to be a mere technicality. Clearly, the drafters of the amendment thought the warning significant in requiring that it be printed in large bold font "in a prominent place" on the first page of the requests. *See* Ill. Sup. Ct. R. 216(g). Such a warning seems particularly necessary for a *pro se* plaintiff who may not recognize the severity of failing to respond. In light of this violation of Rule 216, the Court vacates its earlier ruling granting Defendant's Motion to Deem Facts Admitted.

That does not end the discussion, however. The Court is troubled by the fact that in responding to Defendant's Motion, Plaintiff offered an unsigned, undated, unverified copy of her

responses to the Court. Both Defendant's counsel and counsel for a prior third-party defendant offer affidavits that they never received such a response. These facts could lead to the unpleasant possibility that Plaintiff may have drafted her responses for the first time in response to Defendant's Motion, years after they were due. Plaintiff needs to be aware that filing false or frivolous pleadings with the Court will lead to severe sanctions pursuant to Federal Rule of Civil Procedure 11. Plaintiff should file signed and dated responses to Defendant's Requests to Admit.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1.  Grants in part and denies in part Defendant's Motion to Quash, for Entry of a Protective Order and for Sanctions (ECF No. 39).

2.  Grants William Gates' Motion to Quash and for a Protective Order (ECF No. 42).

3.  Grants in part and denies in part 900 Venture's Motion to Quash and for a Protective Order (ECF No. 46).

4.  Grants Patrick Meara's Motion to Quash (ECF No. 67).

5.  Denies Plaintiff's Motion for Sanctions (ECF No. 76).

6.  Grants in part and denies in part Plaintiff's Motion for Reconsideration (ECF No. 77). Pursuant to this ruling, the Court vacates its earlier decision granting Defendant's Motion to Deem Facts Admitted (ECF No. 72), and denies that Motion (ECF No. 57).

7.    The parties have thirty (30) days from the entry of this Order to complete any outstanding discovery so that the case may proceed.   No party is to serve any new discovery.

**IT IS SO ORDERED.**


_____
           Harry D. Leinenweber, Judge
           United States District Court

Date: 5/6/2013

- 26 -