IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE PARKER, | |
| Plaintiff, | |
| | No. 12 C 3207 |
| FOUR SEASONS HOTELS, LIMITED, | Hon. Harry D. Leinenweber |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Diane Parker ("Parker") was injured after a sliding glass bathroom door shattered on her while she was staying at a hotel owned and operated by Defendant Four Seasons Hotels, Limited ("Four Seasons"). Several motions are pending before the Court: Four Seasons' motion for summary judgment, (ECF No. 88); four separate motions to strike certain evidence Parker submitted in opposition to the motion for summary judgment, (ECF Nos. 119, 121, 123, and 125); and Four Seasons' motion for sanctions against Parker for allegedly making false statements and misrepresentations in her filings with this Court, (ECF No. 88). For the reasons explained below, Four Seasons' motion for summary judgment is granted in part and denied in part. The motions to strike and the motion for sanctions are denied.

## I. MOTIONS TO STRIKE

As an initial matter, Four Seasons has moved to strike Parker's Local Rule 56.1 Statement of Facts, her Statement of Additional Facts, her affidavit in opposition to the motion for summary judgment, and the supporting affidavits of her father and sister. Motions to strike are disfavored and generally unnecessary since the parties are free to present arguments as to the adequacy or inadequacy of the evidence in their briefing on the underlying motion. Moreover, Local Rule 56.1 "includes its own enforcement provisions, making motions to strike [Local Rule] 56.1 statements or responses superfluous at best." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 379 F. Supp. 2d 968, 971 n.1 (N.D. Ill. 2005). The Court has taken into account the various arguments raised in the motions to strike and is capable of determining which facts are relevant to the present motion and which facts are extraneous or improper. *See, e.g., Jenkins v. Spaargaren*, No. 09 C 3453, 2011 WL 1356757, at *2 (N.D. Ill. Apr. 7, 2011). Accordingly, each of the motions to strike is denied as moot.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Background

On April 27, 2007, Parker checked in as a guest of the Four Seasons Hotel Chicago ("Hotel"). Parker was assigned to Room 3627. The following day, while exiting the bathroom after

2

taking a shower, Parker attempted to open a frosted sliding glass door separating the bathroom from the vanity area. As Parker slid open the door, it exploded suddenly and rained shards of glass onto her naked body causing her to suffer injuries.

Parker's sister, Cindy Schiavon ("Schiavon"), who also was staying at the Hotel at the time, called down to the front desk to request help. Although Schiavon asked specifically for assistance from a female employee, two male employees arrived at the room instead. Shortly thereafter, Joesph Gartin ("Gartin"), an engineer employed by the Hotel, arrived to investigate the incident. According to Schiavon's affidavit, Gartin immediately looked upwards towards the door's overhead track and stated that it "look[ed] like the stopper [had] moved again." Gartin went on to explain that the Hotel had been renovated recently and that "several" of the newly-installed sliding glass doors had exploded because the overhead track stoppers were not working properly. Gartin further stated that Parker's room was on the Hotel's "do not sell" list and suggested that Schiavon check the glass door in her own room.

On April 21, 2009, Parker brought suit for her injuries in the Circuit Court of Cook County, Law Division. After years of discovery, Parker dismissed the case voluntarily and, on April 30, 2012, refiled the action in this Court. Although Parker's

Amended Complaint does not specify particular Counts, a liberal reading of her pleadings permits the Court to infer the following causes of action: (1) premises liability, (2) common law fraud, (3) violation of the Illinois Safety Glazing Materials Act and the Chicago Municipal Code, (4) negligence in connection with the installation of the Hotel's sliding glass doors; (5) spoliation of evidence, and (6) intentional infliction of emotional distress. Parker's brief in opposition to Four Seasons' motion for summary judgment does not indicate that she pursues other theories of liability, so the Court addresses only these six claims.

**B. Legal Standard**

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. *Id.* If the moving party satisfies its burden, the non-movant must present evidence sufficient to demonstrate that a genuine factual dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In doing so, the non-moving party "must do more than show that there is some metaphysical doubt as to the

4

material facts." *Sarver v. Experian Info. Sys.*, 390 F.3d 969, 970 (7th Cir. 2004). Rather, it must demonstrate "through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial." *Knight v. Wiseman*, 590 F.3d 458, 463-64 (7th Cir. 2009).

### C. Analysis

#### *1. Premises Liability*

In a premises liability action, the plaintiff has the burden of proving "(1) the existence of a condition that presents an unreasonable risk of harm to persons on the premises; (2) that the defendants knew, or should have known, that the condition posed an unreasonable risk of harm; (3) that the defendants should have anticipated that individuals on the premises would fail to discover or recognize the danger or otherwise fail to protect themselves against it; (4) a negligent act or omission on the part of the defendant; (5) an injury suffered by the plaintiff; and (6) that the condition of the property was a proximate cause of the injury to the plaintiff." *Mueller v. Phar-Mor, Inc.*, 784 N.E.2d 226, 231 (Ill. App. Ct. 2000). Under Illinois law, owners of property owe their invitees a duty to maintain the premises in a reasonably safe condition. *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (citations omitted). This duty includes an obligation to inspect and repair dangerous conditions on the

5

property or give adequate warnings to prevent injury. *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988). To be liable, the defendant must have had actual or constructive notice of the dangerous condition. *Id.*

The parties dispute whether Four Seasons knew or should have known that the sliding glass door in Parker's room was a dangerous condition. Four Seasons contends that the incident was "the first of its kind" and that no similar glass doors ever had broken at the Hotel prior to the occurrence in this case. That assertion, of course, ignores Schiavon's affidavit, which indicates that Gartin acknowledged that the Hotel had experienced problems with other sliding glass doors and that several had exploded on prior occasions because of defective track stoppers. Four Seasons' only response is that Schiavon's affidavit should be disregarded because Parker allegedly failed to disclose her as a witness. That claim, however, finds no support in the record. Indeed, in answers to Four Seasons' state court interrogatories, Parker listed Schiavon as a witness who was present at the time of the incident. (*See*, Pl.'s Ans. to Def.'s Interrogatories ("Pl.'s Int.") ¶¶ 3, ECF No. 122-2). Parker further noted that she was aware that various Hotel employees (although, at the time, she did not know their names) made oral statements relating to the occurrence shortly afterwards. (*Id.* ¶ 22). In addition, Schiavon's name again

appeared in Parker's written Rule 26(a)(1) disclosures, which she submitted after she refiled her case in this Court. (Pl.'s 26(a)(1) Disclosures at 1, ECF No. 38).

Four Seasons complains that Parker withheld the existence and contents of Schiavon's discussion with Gartin despite having asked specifically whether Parker or "anyone acting on [her] behalf" had ever had any conversations with any person regarding "the manner in which the occurrence complained of occurred." (Pl.'s Int. ¶ 21). While it is true that Parker did not include Gartin's statements to Schiavon in her answer to that interrogatory, there is nothing to suggest that Schiavon was acting "on Parker's behalf" when Gartin mentioned to her that other sliding glass doors in the Hotel had exploded before. Therefore, it is difficult to see how Parker's answer was in any way improper. Under the circumstances, Four Seasons' cries of foul play simply are not credible.

While Schiavon's affidavit alone is enough to preclude summary judgment on the issue, the Court notes that there is other evidence that Four Seasons knew that its sliding glass doors were a potential hazard to guests. In an email dated October 2, 2007, John Sheridan ("Sheridan"), the Senior Vice President of James McHugh Construction Co., the general contractor that had performed renovations at the Hotel shortly before Parker's stay, noted that at least five sliding glass

7

doors had broken since the renovation and that the door in Room 3627 (Parker's room) actually had broken on two separate occasions. (Pl.'s Mem. in Opp. to Sum. J. ("Pl.'s Opp. Mem."), Exs. PL-B-1, PL-B-2 ("Sheridan Email"), ECF Nos. 101-2, 101-3). Since Four Seasons stated in answers to interrogatories that it did not replace the glass door in Parker's room after she was injured, (*see*, Def.'s Answers to Pl.'s Second Set of Interrogatories ¶ 4, ECF No. 101-9), it is clear that the other occasion on which the door in Parker's room broke happened at some point prior to her stay. Thus, it can be inferred that Four Seasons was aware that the sliding glass door in Parker's very room was defective.

But there is a wrinkle: the email is hearsay and, since it was sent several months *after* Parker sustained her injuries, the assumption that Four Seasons was on notice is only valid if the contents of the message are admitted for the truth of the matters asserted. The email, however, does not appear to be admissible under any of the traditional exceptions to the Hearsay Rule. Nonetheless, courts have long recognized that the prohibition on hearsay is not intended to be a mechanical bar on otherwise reliable evidence. Thus, Rule 807 of the Federal Rules of Evidence permits the admission of hearsay statements to prove the truth of their contents if (1) the statements have circumstantial guarantees of trustworthiness equivalent to the

8

type of evidence allowed under other hearsay exceptions, (2) the statements are offered as evidence of a material fact, (3) the statements are more probative on the point for which they are offered than any other evidence that the proponent can obtain through reasonable efforts, and (4) admission of the statement would best serve the purposes of the Federal Rules and the administration of justice.  Put more simply, hearsay evidence "should be admissible when it is reliable, when the jury can understand its strengths and limitations, and when it will materially enhance the likelihood of a correct outcome." *United States v. Boyce*, 742 F.3d 792, 802 (7th Cir. 2014) (Posner, J., concurring).

Where, as here, the so-called "hearsay dangers" – lack of reliability and the inability to cross-examine the declarant – are minimal, there is no reason to bar evidence simply because it is hearsay in a technical sense.  There can be no question that the contents of the Sheridan Email are highly probative to the case and, indeed, more probative than any other evidence on the issue of premises liability.  Moreover, there is nothing to indicate that the Sheridan Email is somehow unreliable or otherwise inaccurate.  Gartin's comment to Schiavon that "several" sliding glass doors had broken in the past provides additional circumstantial guarantees that the statements in Sheridan's email are neither untrustworthy nor false.  Under

these circumstances, the Court concludes that the admission of this evidence would significantly enhance the likelihood of a correct outcome in this case. Accordingly, the statement is admitted under the Residual Exception to the hearsay rule.

Considering both Schiavon's affidavit and the Sheridan Email, it is clear that there is a significant factual dispute regarding Four Seasons' knowledge of prior incidents involving guestroom sliding glass doors. Summary judgment therefore is improper on Parker's premises liability claim.

### *2. Fraud*

Parker next alleges that Four Seasons fraudulently concealed its plans to install sliding glass doors in guestroom bathrooms by failing to list this proposed work in its permit application with the Department of Buildings. To recover on an action for common law fraud, a plaintiff must prove, among other things, that her reliance on the defendant's fraudulent statement led to her injury. *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 748 (N.D. Ill. 2012). Here, the allegedly fraudulent statements of which Parker complains were made to the Department of Buildings, not to her. Since Parker cannot show that she relied on statements for which she was unaware, her fraud claim must be rejected.

Moreover, there simply is no evidence that Four Seasons perpetrated any fraud in connection with the Hotel's renovation

plans.  Although Parker finds it significant that Four Seasons did not mention the installation of sliding glass doors in its permit application, it is obvious that the application's three-line entry box for "Description of Proposed Work" was not intended to require an exhaustive list.  At any rate, at the same time Four Seasons filed its application, it also provided the Department of Buildings with a complete set of architectural drawings detailing the precise nature of the work that was to be performed.  (Affidavit of John E. Sheridan, sworn to on May 6, 2013 ("Sheridan Aff.") ¶¶ 9-14, ECF No. 98-7).  Those plans, which Four Seasons incorporated by reference in the permit application itself, provide specifically for the installation of sliding glass doors in guestroom bathrooms, including Parker's room.  (*Id.*).  Clearly, there was no attempt by Four Seasons to mislead the Department of Buildings as to its intention to install sliding glass doors in its renovation of the Hotel.

Accordingly, summary judgment is granted in favor of Four Seasons on Parker's common law fraud claim.

### 3. *Violation of Safety Glazing Regulations*

Parker next asserts that Four Seasons used inferior quality glass when it installed the guestroom sliding glass doors, thereby violating the Illinois Safety Glazing Materials Act ("Safety Glazing Act" or "Act"), 430 Ill. Comp. Stat. 60/1 *et seq.*, and Section 13-124-350 of the Chicago Municipal Code

11

("Municipal Code"). Both the Safety Glazing Act and the Municipal Code mandate that any materials used in the construction of sliding glass doors meet certain specifications and safety requirements. Neither law, however, provides plaintiffs a private right of action for damages caused by alleged safety violations. Indeed, under the Safety Glazing Act, the only form of relief available is a criminal penalty. *See*, 430 Ill. Comp. Stat. 60/7; *Rhodes v. Mill Race Inn, Inc.*, 467 N.E.2d 915, 917-18 (Ill. App. Ct. 1984) (finding no implied private right of action for violations of the Act). Similarly, the Municipal Code affords no express civil remedy for violations of Section 13-124-350 and the Court is aware of no case (and Parker cites none) that has extended an implied right of action to plaintiffs seeking redress for injuries arising under that Section. Since traditional tort remedies are available to Parker for any harm caused by Four Seasons' alleged use of substandard glass, the Court declines to imply a private right of action under the Municipal Code. *See*, *e.g.*, *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999) (an implied cause of action is not conferred under the Chicago Municipal Code where a common law negligence claim provides an adequate remedy).

For these reasons, Four Seasons is entitled to summary judgment on Parker's Safety Glazing Act and Municipal Code claims.

### *4. Negligent Installation of Sliding Glass Doors*

To the extent that Parker argues that Four Seasons was negligent in its installation of the sliding glass doors, any claim in that regard is unsupported by the record. "In an action for negligence under Illinois law, a plaintiff must show 'that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries.'" *Chess v. United States*, 836 F. Supp. 2d 742, 751 (N.D. Ill. 2011) (quoting *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999)). Here, Parker's only evidence of negligence is her allegation that the glass found on the Hotel's sliding doors did not bear the proper safety etchings required by law. Parker also proffers the "expert opinion" of her father, Alan Frank ("Frank"), a suspended attorney who also claims to have an engineering background and an extensive knowledge of the glazing requirements for tempered and laminated glass. (*See* Aff. of Alan Frank, sworn to on July 17, 2013 ("Frank Aff."), ECF No. 104). Since Parker never sought to qualify Frank as an expert witness, however, the Court disregards his undisclosed opinion testimony, which in any event is speculative and, for the most

part, irrelevant.  *See*, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

As to Parker's claim that the Hotel failed to use glass with the appropriate safety etchings, the uncontroverted evidence demonstrates that Four Seasons used certified tempered glass that complied with all applicable federal, state, and municipal codes.  (Aff. of Arnold Harris, sworn to on Apr. 30, 2013 ("Harris Aff.") ¶ 14, ECF No. 98-8).  Contrary to Parker's assertion, all necessary safety etchings did appear originally on the glass, but the contractor in charge of installing the sliding doors received a waiver permitting the removal of all markings in order to provide Four Seasons with a clean product.  (*Id.* ¶ 17).  In light of the foregoing explanation, it is difficult to see how Four Seasons' conduct could be construed as negligent in any way.

Accordingly, summary judgment is granted on Parker's negligent installation claim.

### 5. *Spoliation of Evidence*

Parker next alleges that Four Seasons intentionally "covered-up" critical evidence to her case by "destroying, concealing or disposing of" the individual pieces of glass that broke off of the sliding door.  Because Illinois law "does not recognize a tort of intentional spoliation," the Court construes Parker's claim as one of ordinary negligence.  *Borsellino v.*

14

*Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509-10 (7th Cir. 2007). Contrary to Parker's assertion, there is no evidence that Four Seasons breached any duty it owed her in its handling of the broken glass. Indeed, Four Seasons represents that the pieces of glass *were* preserved and have been available to Parker for inspection at counsel's office since the inception of this litigation. To the extent that Parker complains that she has been unable to have the glass "test[ed] by experts who are capable of corroborating the extreme extent to which . . . [the] glass violated the law," (Am. Compl. ¶ 54, ECF No. 11), any test results in that regard would be irrelevant because the Court has rejected Parker's claims relating to Four Seasons' alleged failure to use the appropriate type of safety glass. Accordingly, summary judgment is granted in favor of Four Seasons on Parker's spoliation claim.

### *6. Intentional Infliction of Emotional Distress*

Parker's final claim is for damages arising out of the emotional distress she alleges she suffered as a result of Four Seasons sending two male employees into her room while she remained naked after the incident. To succeed on a claim for Intentional Infliction of Emotional Distress ("IIED"), a plaintiff must show that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant intentionally or recklessly caused the plaintiff emotional distress, (3) the

15

plaintiff, in fact, suffered severe or extreme emotional distress, and (4) the plaintiff's emotional distress was actually and proximately caused by the defendant's outrageous conduct. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767–68 (Ill. 1976)).

Here, Parker has presented no evidence that Four Seasons engaged in extreme or outrageous conduct or that it intentionally or recklessly caused her emotional distress. Although Schiavon may have asked the front desk for "female assistance," there is no indication that she communicated to the Hotel that her reason for this request was because Parker was unclothed. Thus, there is no indication that the Hotel was aware that Parker would be naked when staff arrived at her room. Understandably reacting to Parker's urgent need for medical attention, the Hotel sent two employees who happened to be male. Under the circumstances, Four Seasons had no way of knowing that sending a male employee to Parker's room would cause her severe emotional distress. Thus, whatever brief indignity Parker may have suffered as a result is not recoverable here. Accordingly, summary judgment is granted on Parker's IIED claim.

### IV. MOTION FOR SANCTIONS

On December 14, 2012, Four Seasons filed a motion seeking to deem certain factual matters admitted on grounds that Parker

16

had defaulted on her discovery obligations by failing to respond to its state court requests to admit. (ECF No. 57). Parker objected to that request, contending that she, in fact, had responded to Four Seasons' requests "on or about February 4, 2011, by U.S. Mail, postage pre-paid." (ECF No. 63). Counsel for Four Seasons denied having received anything from Parker, however; thus, in an apparent attempt to corroborate her claim, Parker submitted an unsigned and undated copy of her purported responses.

In a Memorandum Opinion and Order dated May 6, 2013, the Court ordered Parker to file signed and dated responses, since it was unclear whether her undated submissions simply were drafted after the fact in an effort to manufacture evidence in opposition to Four Seasons' motion. (ECF No. 84). On May 20, 2013, Parker resubmitted a copy of her responses, which was signed and dated May 9, 2013 – more than two years after the date she claimed to have mailed them.

On May 24, 2013, Four Seasons filed a motion for sanctions, arguing that Parker failed to comply with the Court's May 6 Order and that her undated responses did not substantiate her claim as to the timeliness of her original submissions. (ECF No. 88). In opposition to the motion, Parker submitted an affidavit reaffirming that she had mailed her responses to Four Seasons' counsel in February 2011. (Aff. of Parker ("Parker

17

Aff."), at 1, ECF No. 92-1). Parker further explained that she was unable to provide a copy bearing the correct date because she had retained only an electronic version of the document, which contained neither her signature nor any date. (*Id.*). In an apparent effort to comply with the Court's order, however, Parker simply resubmitted this version, which she altered to include the current date. (*Id.*).

Although it was perhaps somewhat irresponsible of Parker to fail to maintain verified copies of her original responses, there does not appear to be any evidence that she intended to mislead the Court by submitting the "dated" copy which she produced in reply to the May 6 Order. Rather, she affixed the current date because she had no other version of the document and the Court directed her to produce a dated copy. In the absence of any clear indication that Parker intended any deceit by her conduct, the Court is unable to conclude that Parker acted in bad faith.

This is not to say, however, that the Court discredits Four Seasons' claim that it never received Parker's original responses. Nor is the Court unsympathetic to any frustration that such a delay may have caused. But without evidence that Parker willfully made false statements or submitted misleading documents, Four Seasons' complaints alone are not sufficient to

warrant the imposition of sanctions. Consequently, the application for sanctions is denied.

## V. CONCLUSION

For the reasons explained above, Four Seasons' motion for summary judgment, (ECF No. 97), is granted in part and denied in part. Four Seasons' motions to strike, (ECF Nos. 119, 121, 123, and 125), are denied as moot. Four Seasons' motion for sanctions, (ECF No. 88), is denied.

**IT IS SO ORDERED.**

Dated: 3/31/2014

Judge Harry D. Leinenweber