UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE PARKER,<br><br>   Plaintiff,<br><br> v.<br><br>FOUR SEASONS HOTELS, LIMITED,<br><br>   Defendant. | No. 12 CV 3207<br><br>Judge Manish S. Shah |

### MEMORANDUM OPINION AND ORDER

Plaintiff Diane Parker was injured when a sliding glass door in her suite at the Four Seasons shattered. Four Seasons admitted premises liability, and a jury awarded Parker compensatory damages. Parker appealed my order striking her claim for punitive damages, and the court of appeals reversed and remanded the case for further proceedings on punitive damages. After a second trial, this time limited to the question of punitive damages, a jury found that Parker was not entitled to punitive damages. Parker now moves for a new trial, and both Four Seasons and Parker submit bills of costs.

### I. Legal Standards

Parker does not name the legal rule that she moves under, but her request for a new trial falls under Federal Rule of Civil Procedure 59.[1] Under Rule 59(a)(1)(A), I may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason

---

[1] Several times in the briefing, Parker argues that the standard of review should be de novo. Arguments about the standard of review belong in the appellate court.

for which a new trial has heretofore been granted in an action at law in federal court." "[A] new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018) (citation omitted). "A new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 440 (7th Cir. 2009). An error "may be deemed harmless if the record indicates the trial result would have been the same." *Id.*

## II. Background

Diane Parker filed a pro se complaint against Four Seasons Hotels, Limited, requesting damages for injuries she sustained from a shattered shower door. [1].[2] The case started in the Circuit Court of Cook County in 2009, but Parker voluntarily dismissed it and then filed a new case in federal court in 2012, [1] at 1–2, where it was assigned to Judge Leinenweber. Parker alleged that her injuries occurred in 2007, when she was a guest at the Four Seasons. [11] ¶ 9. Her suite had a sliding glass door in the bathroom, and when she slid the door open, the handle collided with the wall. [11] ¶¶ 14–15. The collision caused the glass to explode and shatter, throwing her body against the wall and onto the floor. [11] ¶¶ 15–16. Parker alleged that the hotel had undergone renovations shortly before her stay—which included

---

[2] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings.

2

the installation of the sliding glass doors in the bathrooms—and that the renovations were not done in compliance with the law. [11] ¶¶ 21–38. Parker sought compensatory and punitive damages. [11].

After discovery, Four Seasons moved for summary judgment on Parker's entire complaint. [96]. Judge Leinenweber inferred six causes of action from Parker's allegations: premises liability, common law fraud, violation of the Illinois Safety Glazing Materials Act and the Chicago Municipal Code, negligence in connection with the installation of the sliding glass doors, spoliation of evidence, and intentional infliction of emotional distress. [137] at 4. He granted summary judgment in favor of Four Seasons on all but the first, leaving premises liability as the only cause of action left for trial. [137]. Not long after Judge Leinenweber's ruling, the case was reassigned to me. [142].

Four Seasons then moved to strike Parker's claim for punitive damages, [149],[3] and I granted the motion, finding that there was no evidence to suggest Four Seasons acted willfully and wantonly. [155]; [156]. Shortly before trial, Four Seasons admitted liability, leaving the amount of compensatory damages as the only question for the jury to decide. [184]; [196]. Parker represented herself at trial, and the jury awarded her $20,000 in compensatory damages, [200], which, after a $8,000 set-off, amounted to a $12,000 judgment against Four Seasons. [216].

---

[3] The parties attempted to settle the case with the assistance of Magistrate Judge Schenkier, but, as they explained in court on September 29, 2014, the pending claim for punitive damages was a barrier to settlement. The parties decided to seek a pretrial ruling on the question as a cost-effective way to resolve their dispute. *See* [156] at 7.

Parker appealed, focusing primarily on my order granting the hotel's motion to strike Parker's punitive damages claim, and she was successful. [251]. The court found that Parker's evidence—including a hotel engineer's comment that the stopper moved "again," a statement that a "bunch" of the sliding glass doors had exploded, an email suggesting that the door in Parker's room had exploded before and been replaced, and evidence that rooms with the issue had been placed on a "do not sell" list[4]—did raise a reasonable inference of willful and wanton conduct. [251] at 12. The court reversed and remanded "for further proceedings on the question of punitive damages." [251] at 2.

On remand, I denied Parker's request to revisit the compensatory damages award, and the case proceeded to a second trial only on the issue of punitive damages. [269]. Parker retained counsel to represent her at trial, [325], and the jury declined to award any punitive damages. [354].

III. Analysis

   A. Exclusion of Evidence Related to Federal, State, and Municipal Code Violations

Parker argues that it was an error to exclude evidence that Four Seasons violated the Illinois Safety Glazing Materials Act, 430 ILCS 60/3; a federal regulation regarding the testing of safety glazing material, 16 C.F.R. § 1201.4; and the Chicago Municipal Code, § 13-12-050. Parker points to one of Judge Leinenweber's discovery orders for the proposition that "[e]vidence concerning the regulatory or criminal

---

[4] At oral argument in the court of appeals, Parker, representing herself, informed the court that the Four Seasons receptionist told her that she took Parker's room off the "do not sell" list. Oral Arg., Sept. 27, 2016. No such evidence was presented at trial.

penalties to which a defendant exposed itself can be helpful in considering punitive damages." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 184 (N.D. Ill. 2013) (citing *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 678 (7th Cir. 2003)). In *Mathias*, the court reviewed a punitive damages award for excessiveness, noting that "it would have been helpful had the parties presented evidence concerning the regulatory or criminal penalties to which the defendant exposed itself" by its tortious conduct. 347 F.3d at 678. Four Seasons does not dispute that statutory penalties can be relevant to punitive damages. Four Seasons's arguments are rather that (1) Judge Leinenweber found as a matter of law that there was no evidence of any violation and (2) even if there were evidence of a violation, the particular code violations that Parker invokes are not relevant.

   1.   *Illinois Safety Glazing Act*

Illinois requires certain safety glazing material—like tempered glass that meets testing requirements—to be labeled by etching or other means, 430 ILCS 60/3, and Parker argues that she should have been allowed to present evidence that the sliding glass doors were not labeled. In granting summary judgment in the hotel's favor on Parker's negligent installation claim, Judge Leinenweber found that "the uncontroverted evidence demonstrates that Four Seasons used certified tempered glass that complied with all applicable federal, state, and municipal codes." [137] at 14.[5] He further explained that "[c]ontrary to Parker's assertion, all necessary safety

---

[5] Parker says that "Judge Leinenweber never even hinted that the defendant did not violate the ISGMA. He only found that there was no private cause of action for violations of the ISGMA." [364] at 9. Though Judge Leinenweber granted summary judgment on Parker's violation of safety glazing regulations claim on the grounds that there was no private cause

5

etching did appear originally on the glass, but the contractor in charge of installing the sliding doors received a waiver permitting the removal of all markings in order to provide Four Seasons with a clean product." [134] at 14.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).[6] "A ruling that evidence was insufficient to support some finding is the type of ruling that establishes the law of the case." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). New evidence can be a reason to depart from a previous ruling, but "if there is no new evidence, or if . . . the evidence does not undermine the previous ruling on sufficiency, then that previous ruling must stand." *Id*. Parker has not pointed to any new evidence or errors in Judge Leinenweber's application of the law that justify departure from his finding (nor a reason why the law of the case does not apply to the ruling), and Parker did not challenge the sufficiency finding on appeal. So Judge Leinenweber's finding that, as a matter of law, Parker did not provide any evidence that the glass violated laws

---

of action, he clearly found insufficient evidence of a violation when granting summary judgment on the negligent installation claim, which hinged on whether the doors had "the proper safety etchings required by law." [137] at 11–14.

[6] Parker asserts, without citation, that "[t]he only rulings that may be regarded as 'the law of the case' are the rulings of the [Seventh] Circuit," and "[a]ny statements or rulings of the District Court that conflict with the opinion and mandate of the [Seventh] Circuit must be disregarded." [375] at 9. Though the latter is true, the former is not. *See Waid v. Merrill Area Pub. Sch.*, 130 F.3d 1268, 1272 (7th Cir. 1997) ("The law of the case doctrine generally binds a court to its own previous decision on issues arising earlier in the litigation as well as to decisions entered by a higher court earlier in the litigation." (citation omitted)).

6

related to safety glazing labels precluded her from relitigating the issue at trial, and the evidence was properly excluded.

Four Seasons argues that even if Judge Leinenweber's summary judgment finding did not bar the evidence, the evidence about the safety glazing labels was not relevant because the absence of labels did not proximately cause Parker's injuries.[7] The violation's penalty is only a useful yardstick against which to measure punitive damages if it is a penalty that could be imposed for the tortious conduct that caused the plaintiff's injuries. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583 (1996) (describing the third guidepost for reviewing punitive damages awards as "[c]omparing the punitive damages award and the civil or criminal penalties that could be imposed for *comparable misconduct*" (emphasis added)); *Mathias*, 347 F.3d at 678 (describing as relevant "regulatory or criminal penalties to which the defendant exposed itself" by its tortious conduct).[8] For example, if Four Seasons had violated statutory requirements regarding disability accessibility, that would not be

---

[7] Four Seasons frames this argument as one about prejudice, but it is better understood as an argument that exclusion was proper. The argument is not that the evidence would not have made a difference to the jury's outcome but rather that it had no bearing on the issue of punitive damages.

[8] Aside from using penalties to gauge the reasonableness of punitive damages, violations of law could be relevant because they suggest notice to the violator that his conduct is proscribed. *See Callison v. Charleston & W.C. Ry. Co.*, 106 S.C. 123 (1916). In her reply brief, Parker hints at this theory of relevance, though she provides no authority for it. *See* [375] at 6 ("Plaintiff is only required to demonstrate that the Defendant knew that it might be subject to severe civil penalities . . ."). Statutory violations used for this purpose must still have proximately caused the plaintiff's injury. *Cf. Kalata v. Anheuser-Busch Companies, Inc.*, 144 Ill.2d 425, 434 (1991) ("[V]iolation of a statute or ordinance designed to protect human life or property is *prima facie* evidence of negligence" when "the violation proximately caused [plaintiff's] injury and the statute or ordinance was intended to protect a class of persons to which [plaintiff] belongs from the kind of injury that he suffered.").

7

relevant to the question of whether its behavior toward Parker was willful and wanton, because the violation would have nothing to do with Parker's injuries or Four Seasons's conduct toward her. Parker does not cite to any authority suggesting that statutory violations that did not proximately cause a plaintiff's injuries are nevertheless probative for punitive damages.[9]

Parker has made no argument to connect the absence of safety glazing labels to her injuries. The legally required label does not warn the reader of danger—it states who labeled the glazing material, the type and thickness of the material, and that the material meets certain test requirements. *See* 430 ILCS 60/3. In fact, one would imagine that if the glass were etched with such a label and Parker happened to see it while stepping out of the shower, she might have been more confident in the safety of the glass, not more cautious. So whether the glass door complied with the labeling requirement was not relevant to Parker's claim for punitive damages.

And even if the safety glazing labels were relevant and not barred by Judge Leinenweber's prior ruling, Parker was not prejudiced by my ruling to exclude the evidence because the evidence came in anyway. On the second day of trial, Four Seasons questioned Arnie Harris—the glass subcontractor for the Four Seasons renovations—about the certification of tempered glass. This opened the door for Parker, who then elicited testimony from Harris that tempered glass often bears a

---

[9] Parker argues that Four Seasons is attempting to relitigate negligence and causation, but Four Seasons is not trying to relitigate the issue of whether its negligent conduct caused Parker's injuries—it is challenging whether the purported statutory violations caused her injuries.

legally-required "stamp" that certifies its safety and that Harris did not remember whether the Four Seasons's glass doors had stamps (though, he testified, they must have gotten a waiver if not). Parker used the testimony to argue in her closing that the law required labels and that Four Seasons had Harris remove them. Any error was harmless.

### 2. *Federal Regulation on Safety Glazing Material Testing Procedures, 16 C.F.R. § 1201.4*

Parker argues that she should have been permitted to introduce evidence of a violation of 16 C.F.R. § 1201.4, which provides test procedures for safety glazing materials. Parker "paraphrases" the section as providing that "[w]hen tempered glass breaks, the total area of the ten largest pieces must not exceed ten square inches." [364] at 12. Though Parker does not cite the exact provision, she appears to be referencing § 1201.4(e)(1)(ii). Four Seasons asserts that the testing procedures apply only to manufacturers and fabricators. Parker provides no argument in response, nor does she explain how the violation of testing regulations caused her injuries. The evidence was properly excluded.

Anyway, this evidence also came in through the testimony of Harris. Harris testified that the safety standard is that when safety glazing material breaks, it shatters into many little pieces. Parker brought that up in her closing argument, comparing it to the photos of the hotel bathroom after the door shattered and pointing out that the photo showed large chunks of glass and not just tiny pieces. Parker was not prejudiced by the ruling excluding the evidence.

9

### 3. *Chicago Municipal Code, § 13-12-050*

Section 13-12-050 makes it unlawful for a person to construct or alter a premises without a permit or to do so in a manner inconsistent with the drawings or plans approved when the permit was issued, among other things. Parker says that the building permit for the Four Seasons renovations did not include installation of the sliding glass doors as permitted work. In granting summary judgment to Four Seasons on Parker's common law fraud claim, Judge Leinenweber noted that Parker's theory was that the sliding glass doors were omitted from the permit application because the doors were not mentioned in the application's "Description of Proposed Work." [137] at 11. Judge Leinenweber nevertheless found no fraud because when Four Seasons filed its permit application, it filed along with it a complete set of architectural drawings and "[t]hose plans, which Four Seasons incorporated by reference in the permit application itself, provide specifically for the installation of sliding glass doors in guestroom bathrooms, including Parker's room." [137] at 11. On that basis, Judge Leinenweber found no fraud in the permit process, but he did not conclude that there was no violation of the code.

Though the law of the case did not bar the evidence, Parker has not provided any argument as to how the purported violation of the permit regulations contributed to her injuries, so evidence of the violation was not relevant. Parker cites portions of *E.E.O.C. v. Indiana Bell Tel. Co.*, 256 F.3d 516, 527 (7th Cir. 2001), without explaining its applicability to this case, other than that sometimes evidence may not be relevant to liability but nevertheless relevant to the issue of punitive damages. That is a correct statement of the law with which everyone agrees. *Indiana Bell* states

10

that "district courts may not exclude as 'irrelevant' under Rules 401 and 402 any evidence bearing on the defendant's state of mind—and in particular may not categorically exclude evidence tending to show why the defendant acted as it did," *id.* at 528, but Parker does not articulate how evidence of a permit-related code violation shows why Four Seasons acted as it did with respect to her. And Judge Leinenweber's finding that Four Seasons did not commit fraud with respect to the permit application suggests that any violation was unintentional, further reducing the probative value of a permit violation.

Any minimal relevance was outweighed by the risk of prejudice, so the evidence was excludable under Federal Rule of Evidence 403. Evidence about the details of the permit disclosure would have taken time, distracted from the question of whether the hotel knew that the doors were dangerous, and created a risk that the jury would mistakenly believe that a violation of the code was necessarily proof of reprehensible conduct. It was not an error to exclude evidence of the code violation.[10]

### B.     Exclusion of Sheridan Email

Parker asserts that it was an error to exclude the October 2007 email from John Sheridan, a vice president of the general contractor in charge of the hotel renovations, which was sent after Parker's door exploded and indicated that the door in her room exploded "twice." [363] at 9. Parker did not substantively address the

---

[10] Parker argues that the "cumulative effect" of excluding evidence of all three code violations "was tantamount to a directed verdict of 'zero' punitive damages." [364] at 12. This is the closest Parker comes to making a prejudice argument. Parker has not explained why evidence of any of these purported code violations (or all of them together) would have made a difference to the jury, and it is not enough to say so in a conclusory manner.

11

Sheridan email in her reply brief, which waives the argument. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). But I will address her arguments anyway.[11]

The Sheridan email contains subsequent remedial measures—it describes adding "a continuous bottom guide" and "corner protection" to the glass. I agree with Parker that federal evidentiary rules apply in this case, not Illinois rules. But, as Parker points out, "Illinois law [ ] tracks the requirements of Rule 407." *Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 3005306, at *5 n.2 (N.D. Ill. July 23, 2012); [364] at 14. Rule 407 provides that subsequent remedial measures are not admissible to prove negligence; culpable conduct; a defect in a product or its design; or a need for a warning instruction. Fed. R. Evid. 407. However, such measures may be admissible for "another purpose," including "impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. Behind the rule is the "social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 407 advisory committee's notes. "The same policy considerations that militate against admission of that evidence as proof of negligence . . . counsel against its admission as proof of willful and wanton misconduct." *Schaffner v. Chicago & N. W. Transp. Co.*, 129 Ill.2d 1, 17 (1989). Because Sheridan's email contains discussion

---

[11] Parker does not challenge the fact that I departed from Judge Leinenweber's ruling at summary judgment regarding the admissibility of the email. As I explained in ruling on Four Seasons's motion in limine, "failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial." Fed. R. Civ. P. 56(c)(2) advisory committee's note (2010 amendment).

of post-occurrence remedial measures, it is inadmissible evidence of willful and wanton conduct.

Parker argues that she sought to admit the email to prove that Four Seasons had control over the renovations and glass doors. Four Seasons points out that it admitted negligence, effectively conceding control over the premises and the glass doors, and that it only argued that Four Seasons, as the management company, did not control the hotel renovations or installation of the doors. Evidence that Four Seasons was involved in fixing issues with the doors after Parker's injury adds nothing to the question of whether Four Seasons controlled the renovations and installation—it would only reinforce the conceded fact that Four Seasons was responsible for keeping the rooms safe, including the safety of the sliding glass doors.

Though Parker does not articulate it this way, Parker's better argument is that the email is not evidence of subsequent remedial measures, but rather evidence of what Four Seasons knew at the time of her injury. The email says that the door in Parker's room broke "twice," and a Four Seasons engineer answered in an interrogatory that her door was never replaced after her injury—suggesting that the door broke once before Parker's stay. But Sheridan's statement in the email that the door broke twice is hearsay not subject to a hearsay exception. The email could not be admitted under the residual hearsay exception either, because it was not "more probative on the point for which it [was] offered than any other evidence" that Parker could have obtained "through reasonable efforts." Fed. R. Evid. 807. Sheridan was a witness at trial, and Parker could have directly elicited the information she sought

13

from him in person and used the email to impeach him if necessary. But Parker did not elicit the information from Sheridan, so she cannot complain of its absence at trial now. The email was properly excluded and, even if it was excluded in error, the exclusion did not prejudice Parker because Sheridan could have been confronted with it at trial.

C.     Scope of Remand

Parker's motion includes a heading which seems to present an argument that it was an error to deny plaintiff's motion to "conduct a complete new trial for both compensatory and punitive damages." [364] at 15. But the single statement below the heading only incorporates by reference Parker's motion for reconsideration (which I previously denied) on my ruling that the second trial would be limited to the issue of punitive damages and would not relitigate compensatory damages. [303]; [334]. Incorporation by reference to a prior motion or brief is not a proper way to present argument. *See Williams-Lindsey v. Nat'l Car Rental Sys., Inc.*, 143 Fed.App'x 712 (7th Cir. 2005) (explaining that incorporation of other documents by reference "creates problems with enforcing the limits on the length of briefs").

Anyway, it was not an error to limit the issue on remand to that of punitive damages. The Seventh Circuit "reverse[d] and remand[ed] for further proceedings on the question of punitive damages" and said nothing about vacating the compensatory damages award. [251] at 2. On remand, Parker requested that the case be reassigned to another judge under Circuit Rule 36, which generally states that "[w]henever a case tried in a district court is remanded by this court for a new trial, it shall be reassigned by the district court for trial before a judge other than the judge who heard

14

the prior trial." In denying reassignment, the Executive Committee explained that the Seventh Circuit "vacated the grant of summary judgment on punitive damages and remanded for a trial—the first trial, not a 'new' one—on the claim for relief for which summary judgment was vacated." [292]. *See also Parker v. Four Seasons Hotels, Ltd.*, 7th Cir. No. 16-1244, Dkt. No. 55 (Oct. 23, 2017) ("This case did not go to trial on the question of punitive damages—the only question on remand—and so Circuit Rule 36 is inapplicable."). If the Seventh Circuit had vacated the entire judgment and remanded for a new trial, Circuit Rule 36 would have applied. But the scope of the remand was limited to the issue of punitive damages, so Circuit Rule 36 did not apply, and it was not an error to prevent Parker from revisiting compensatory damages.

### D. Informing Jury of Compensatory Damages Award

Parker argues that it was an error to inform the jury that she was awarded $20,000 in compensatory damages in a prior proceeding. Parker's argument hinges on the notion that the Seventh Circuit vacated the compensatory damages award on appeal, but, as I explained, the Seventh Circuit only reversed summary judgment on the punitive damages claim and did not disturb the compensatory damages award. As the Ninth Circuit explained under similar circumstances, "[w]ithout knowing the amount of [compensatory] damages, the punitive damages jury could not have come to a reasoned conclusion as to the amount of additional damages necessary to deter [Four Seasons] from similar conduct in the future." *White v. Ford Motor Co.*, 500 F.3d 963, 974 (9th Cir. 2007) (holding that it was an abuse of discretion for the district court to withhold the amount of compensatory damages from the punitive damages

15

jury).[12] Though *White* applied Nevada law, the two punitive damages factors the court pointed to—"the reprehensibility of the conduct of the defendant" and "the amount of punitive damages which will have a deterrent effect on defendant in light of the defendant's financial condition"—are factors that Illinois juries must consider when awarding punitive damages too. *Id.*; Ill. Pattern Instruction (Civil) 35.01. Informing the jury of the compensatory damages award was not an error. Even if it were, Parker has not explained why it would have made a difference to the jury's verdict.

## IV. Bills of Costs

Both Parker and Four Seasons seek to recover costs. As I explained in ruling on the parties' bills of costs after the compensatory damages award, [243], Four Seasons offered Parker $50,000 pursuant to Federal Rule of Civil Procedure 68 in September 2015, and Parker rejected the offer. The combined jury awards from both trials amount to $20,000, or $12,000 after the set-off. Rule 68(d) provides that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68. Rule 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54. "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall &*

---

[12] Parker misunderstands the procedural posture of *White*, arguing that "the [Seventh] Circuit could have followed the precedent of [*White*] and could have directed the District Court to instruct . . . the jury about the $20,000 verdict of the first jury, but chose not to." [375] at 7. The *White* opinion instructing the district court to tell the jury about the compensatory damages award came *after* the punitive damages trial, not before.

16

*Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005). To be taxable, a cost must be recoverable and the amount assessed reasonable. *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000).

Four Seasons claims $2,246.55 in costs, consisting of transcript fees, witness appearance fees, and the $294.55 in costs I awarded after the compensatory damages trial. Because Parker's award is less than Four Season's September 2015 offer, she must pay the costs it incurred after the offer. Both "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" and "[f]ees and disbursements for . . . witnesses" are recoverable. *See* 28 U.S.C. § 1920. Four Seasons ordered transcripts of the three-day compensatory damages trial at the ordinary rate of $3.65 per page, totaling $1,752. Parker argues that the trial transcripts from the compensatory damages trial were not necessary, stating that neither party referenced the transcripts in their appellate briefs, but the transcripts were necessary for Four Seasons's preparation for the punitive damages trial, as demonstrated by the references to the transcripts in Four Seasons's motions in limine. The transcripts were ordered at the ordinary rate, so the cost is reasonable. *See* Local Rule 54.1.

Four Seasons requests the $40 witness attendance fee for five witnesses who testified at trial, totaling $200. But Parker says she paid four of those witnesses the attendance fee, because she called them as her witnesses. To avoid a circumstance in which Parker would pay the appearance fees for those witnesses twice, I deny costs as to those four. Parker must pay the witness attendance fee of the fifth witness, and

the $40 fee is reasonable. *See* 28 U.S.C. § 1821(b). Combined with the $294.55 I taxed Parker after the compensatory damages trial, Parker is taxed a total of $2,086.55.

Parker submitted a bill of costs for $6,267.50, with no explanation of why she is entitled to recover her costs. [367]. Nor did Parker reply to Four Seasons's opposition to her bill of costs. [370]. It is not the court's responsibility to justify Parker's request for costs, particularly because she is represented by counsel, and even if it were, I see no justification. Parker's costs are denied.

## V. Conclusion

Parker's motion for a new trial, [361] [364], is denied. Parker's bill of costs is denied. Four Seasons's bill of costs, [365], is granted in part; Parker is taxed $2,086.55.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: October 17, 2018